399 S.E.2d 909

**Hon. Robert R. NELSON, et al.**

**v.**

**Hon. Alfred E. FERGUSON, Judge, et al.**

**No. 19834.**

Supreme Court of Appeals of West Virginia.

Dec. 13, 1990.

Richard L. Mills, Norman E. Rood, Rood & Mills, L.C., Huntington, for Robert R. Nelson.

Roger W. Tompkins, Atty. Gen., Mary Catherine Buchmelter, Sr. Asst. Atty. Gen., Charleston, for WV Human Rights Com'n.

Christopher D. Chiles, Pros. Atty., Huntington, for Alfred E. Ferguson.

John F. Cyrus, Lockwood, Egnor, Gardner & Cyrus, Huntington, for Darrell G. Black.

Pamela Berger, WV Advocates, Inc., Charleston, filed brief of Amicus Curiae.

NEELY, Chief Justice:

In this case we are asked to determine the proper procedure for the production of mental health records alleged to be relevant to the issue of a witness's credibility.

In August 1990, a cross was burned in the yard of Leigh Anne H., a sixteen year old girl. Thereafter, the West Virginia human rights commission investigated the incident. In the course of the investigation, or during news interviews following the

incident—it is not clear which—Ms. H. accused Sergeant Darrell Black of the Huntington police department of making a racist and derogatory comment to her in October 1989 (nearly a year earlier) regarding her interracial dating habits.

Sergeant Black allegedly made the remark to Ms. H. in the presence of Ms. H.'s mother and while Ms. H. was in Sergeant Black's custody at the Huntington police department. This occasion was one of three occasions between October 1989 and January 1990 when Sergeant Black, a supervisor of the juvenile unit of the Huntington police department, was called in his official capacity to deal with Ms. H.'s alleged incorrigible behavior. Twice the police were summoned by Ms. H.'s mother, and once by Ms. H.'s high school principal.

After Ms. H. made the accusation of racial bias against Sergeant Black, the matter was brought to the attention of Robert Nelson, Mayor of the City of Huntington. Mayor Nelson sent a letter to Sergeant Black stating that Sergeant Black had made racist comments directed at Ms. H.; that Sergeant Black was an embarrassment to the Huntington police department; and, that Sergeant Black would be punished in several ways. Mayor Nelson indicated that Sergeant Black would be: (1) demoted to Police Officer First class; (2) placed on one-year probation; (3) required to take part in a program to promote race relations and cultural awareness; and (4) reassigned from his current assignment as juvenile unit supervisor. The Mayor also informed Sergeant Black that he had a right to a hearing before the Huntington civil service commission, had a right to be represented by a lawyer through all stages of proceedings, and that the Mayor's letter would serve as formal charges before the civil service commission.

Sergeant Black retained a lawyer and requested a hearing before the civil service commission. In preparing his case, Sergeant Black determined that Ms. H.'s mental health medical records might be relevant to the issue of Ms. H.'s credibility as a witness. Because, under *Allen v. Smith*, 179 W.Va. 360, 368 S.E.2d 924 (1988) and

*W.Va.Code*, 27–3–1 [1977], mental health records cannot be obtained by a subpoena alone, but require a court order, Sergeant Black petitioned the Circuit Court of Cabell County to compel Ms. H.'s treating psychiatrist to give testimony and produce medical records at an *in camera* hearing before the circuit court.

The *in camera* hearing was held, at which the psychiatrist appeared with the medical records. The court carefully reviewed the medical records over a period of days, contacting the treating psychiatrist at various times for assistance. When the hearing resumed, the court ruled orally that certain portions of the medical records would be disclosed, subject to the treating psychiatrist's confirmation that the release would not adversely affect Ms. H.'s mental condition or treatment. The court also denied the West Virginia human rights commission's motion to intervene in the civil service commission proceeding.

Mayor Nelson and the human rights commission then filed with this Court a joint petition for a writ of prohibition to prevent any disclosure of Ms. H.'s mental health records, and for a writ of mandamus to compel the circuit court to permit the human rights commission to intervene in the civil service commission proceedings.

## I.

■ *W.Va.Code*, 27–3–1 [1977] provides for the confidentiality of mental health records:

(a) Communications and information obtained in the course of treatment or evaluation of any client or patient shall be deemed to be "confidential information" and shall include the fact that a person is or has been a client or patient, information transmitted by a patient or client or family thereof for purposes relating to diagnosis or treatment, information transmitted by persons participating in the accomplishment of the objectives of diagnosis or treatment, all diagnoses or opinions formed regarding a client's or patient's physical, mental or emotional condition; any advice, instructions or prescriptions issued in the course of diag-

nosis or treatment, and any record or characterization of the matters hereinbefore described. It does not include information which does not identify a client or patient, information from which a person acquainted with a client or patient would not recognize such client or patient, and uncoded information from which there is no possible means to identify a client or patient.

(b) Confidential information *may be disclosed:*

(1) In a proceeding under section four [§ 27-5-4], article five of this chapter to disclose the results of an involuntary examination made pursuant to sections two, three [§§ 27-5-2, 27-5-3] or four, article five of this chapter;

(2) In a proceeding under article six-A [§ 27-6A-1 et seq.] of this chapter to disclose the results of an involuntary examination made pursuant thereto;

(3) *Pursuant to an order of any court based upon a finding that said information is sufficiently relevant to a proceeding before the court to outweigh the importance of maintaining the confidentiality established by this section;*

(4) To protect against a clear and substantial danger of imminent injury by a patient or client to himself or another; and

(5) For treatment or internal review purposes, to staff of the mental health facility where the patient is being cared for or to other health professionals involved in treatment of the patient. [Emphasis added.]

Thus *W.Va.Code,* 27-3-1(b)(3) [1977] specifically provides for the disclosure of confidential information pursuant to a balancing test: If the court finds that the information sought is "sufficiently relevant to a proceeding before the court to outweigh the importance of maintaining the confidentiality established by this section," the relevant confidential information may be disclosed.

█ It is worth noting that the statute requires a court order based on the results of the balancing test. In Syllabus Point 3 of *Allen v. Smith,* 179 W.Va. 360, 368 S.E.2d 924 (1988), we made it clear that a bare subpoena is not sufficient to compel the production of mental health records:

A subpoena is issued automatically by a clerk of court upon the *ex parte* application of one party litigant, and although a subpoena is enforceable through the court's power of contempt until it has been quashed by regular, in-court proceedings, a bare subpoena is not the type of binding court order contemplated by *W.Va.Code,* 27-3-1(b)(3) [1977].

In *State v. Allman,* 177 W.Va. 365, 352 S.E.2d 116 (1986), a criminal defendant requested that the alleged victim submit to a mental examination and that the defense be allowed to review her psychological records. The records were delivered to the trial court, who, after reviewing them *ex parte,* ruled that they were not discoverable and that the alleged victim would not be required to submit to a psychological examination. In our review of the mental health records on appeal, we noted that they would be deemed confidential under *W.Va.Code,* 27-3-1 [1977]. Nevertheless, we found in the confidential psychological records admissions on the part of the alleged victim that would partially exculpate the defendant. Therefore, we reversed the trial court's decision and remanded, ordering that defense counsel be provided with a copy of the alleged victim's psychological records, so that he could designate the parts of those records he believed relevant. The trial court was then to hold an *in camera* hearing to determine the relevance of the designated portions of the mental health records.

█ Obviously, when medical records sought to be produced are alleged to be relevant to the issue of a witness' credibility, the court must first determine that the person whose medical records are sought will actually be called as a witness.[1] If the side whose witness the individual would be stipulates that it will not call that person as a witness, the inquiry ends there, and the

---

**1.** In *State v. Allman, supra,* the alleged victim was the chief prosecution witness, so evidence relevant to her credibility was crucial to the defense's case.

mental health records need not be produced. If, on the other hand, such a stipulation cannot be made, then the court should proceed on the supposition that the witness will be called.

## II.

■ As a matter of public policy, the mental health records of children should be treated with particular care to protect the child. In *W.Va.Code*, 49–7–1 [1978], the legislature provides for the confidentiality of juvenile records, particularly adoption records, juvenile courts records, and records disclosing the identity of a complainant of child abuse or neglect. In *W.Va.Code*, 49–7–3 [1941], the legislature attempts to insure that a child's juvenile record will not haunt him or her after he or she becomes an adult. It provides, in part, that: the name of a child involved in juvenile proceedings will stay out of the newspapers, absent a court order; a juvenile record cannot be used against a child in any court proceeding once he or she becomes an adult;[2] and, a juvenile record cannot bar a child from civil service eligibility. Although the medical records at issue in this case were generated by the HCA River Park Hospital and thus do not belong to the class of highly confidential juvenile records, we recognize that many of the same policy concerns are applicable. Unfortunately, mental disease often carries with it a stigma similar to that associated with a criminal record.

■ Statutes and public policy protecting children from unlawful revelations of confidential records concerning them will not be completely effective unless someone is there to represent the interests of the child. Under Rule 17(c) *W.Va.R.Civ.P.* where an infant or other incompetent person has an interest in a proceeding, a court should appoint a guardian *ad litem*. Thus, in the case before us the circuit court should have appointed a guardian *ad litem*, and joined Ms. H. as a party in the circuit court proceeding once it became apparent that it was her personal medical records that were sought. When the records sought pertain to a juvenile, the pleading seeking them should be treated with the same confidentiality as in a regular juvenile proceeding.

A circuit court should make every effort to insure the confidentiality of a child's mental health records and to minimize press coverage surrounding those records. In this case, the judge did an excellent job of keeping the records themselves confidential, because even the lawyers arguing the case before us had not seen Ms. H.'s records.

## IV.

■ We grant the petitioners a writ of mandamus to compel the circuit court to permit the human rights commission to intervene. The human rights commission was intimately involved in the initiation of proceedings against officer Black, and is a proper party to these proceedings because of its interest in protecting from reprisals those who complain to it.

For the reasons stated above, the case is remanded to the Circuit Court of Cabell County for the purpose of determining whether Ms. H. will be called as a witness, and to take further action consistent with this opinion, including the appointment of a guardian *ad litem* to protect the interests of Ms. H., and the granting of the human rights commission's motion to intervene.

Writ of Prohibition as Moulded Awarded.

Writ of Mandamus Awarded.

**2.** *See, State v. Van Isler,* 168 W.Va. 185, 283 S.E.2d 836 (1981).