520 S.E.2d 186

STATE of West Virginia ex rel. GARDEN STATE NEWSPAPERS, INC., Doing Business as the Charleston Daily Mail, Petitioner,

v.

Honorable Jay M. HOKE, Special Judge of the Circuit Court of Kanawha County; Cathy S. Gatson, Clerk of the Circuit Court of Kanawha County; C.C.F., an Infant; William C.F.; the Board of Education of the County of Kanawha; and Dr. Ronald Duerring, Superintendent, Kanawha County Schools, Respondents.

No. 26219.

Supreme Court of Appeals of West Virginia.

Submitted June 29, 1999.

Decided July 12, 1999.

James K. Brown, Esq., John Philip Melick, Esq., Lee von Egmond, Esq., Jackson & Kelly, Charleston, West Virginia, Attorneys for Petitioner.

Timothy N. Barber, Esq., Charleston, West Virginia, Attorney for Cathy S. Gatson.

Michael C. Allen, Esq., Allen Law Offices, Charleston, West Virginia, Attorney for C.C.F. & William C.F.

William S. Steele, Esq., Managing Deputy Attorney General, Charleston, West Virginia, Attorney for Darrell V. McGraw, Jr., Attorney General.

James M. Withrow, Esq., Office of General Counsel, Kanawha County Schools, Charleston, West Virginia, Stephen M. Fowler, Esq., Pullin, Knopf, Fowler & Flanagan, Charleston, West Virginia, Attorneys for Kanawha County Board of Education and Dr. Ronald Duerring.

MAYNARD, Justice:

This case is before the Court upon a petition for writ of prohibition filed by the petitioner, Garden State Newspapers, Inc., doing business as The Charleston Daily Mail,[1] against the respondents, the Honorable Jay M. Hoke, Special Judge of the Circuit Court of Kanawha County; Cathy S. Gatson, Clerk of the Circuit Court of Kanawha County;

1. According to the petitioner, Garden State Newspapers, Inc. is a Delaware corporation that publishes and does business as The Charleston Daily Mail, an afternoon newspaper published every Monday through Saturday in Charleston, West Virginia.

C.C.F., an infant child;[2] William C.F;[3] the Board of Education of Kanawha County; and Dr. Ronald Duerring, Superintendent of Schools, Kanawha County. The petitioner seeks a writ prohibiting respondents, the Honorable Jay M. Hoke and Cathy S. Gatson, from placing under seal or otherwise closing the record or any proceedings with respect to Civil Action No. 99–C–1136 in the Circuit Court of Kanawha County until and unless the proceedings with respect to such sealing or closure are conducted in accordance with the law. We issued a rule to show cause and now deny the writ of prohibition.

## I.

### FACTS

Respondents C.C.F., an infant, and William C.F. filed an action (hereafter "the action") in the Circuit Court of Kanawha County against the Board of Education of Kanawha County; Dr. Ronald Duerring, in his capacity as Superintendent of Kanawha County Schools; L. Lowan, in his capacity as Principal of George Washington High School and personally; and Pete Corbitt, in his capacity as Vice Principal of George Washington High School and personally. By order of May 25, 1999, this Court appointed Respondent, the Honorable Jay M. Hoke (hereafter "Judge Hoke"), Circuit Judge of the 25th Judicial Circuit, to preside as Special Judge in the action.

On June 1, 1999, a proceeding was conducted in the action. The plaintiffs below, C.C.F. and William C. F., moved to close the proceeding, and the defendants did not object. As a result, the proceeding was closed to the public and members of the news media. At the conclusion of the proceeding, Judge Hoke verbally directed that the entire file in the action be sealed. At that time, Judge Hoke did not state his reasons for sealing the file.

On June 8, 1999, Garden State Newspapers, Inc., doing business as The Charleston Daily Mail (hereafter "the petitioner" or "the Daily Mail"), filed a petition for a writ of prohibition in this Court. The Daily Mail sought to prohibit Judge Hoke and Cathy S. Gatson (hereafter "Clerk Gatson") from placing under seal or otherwise closing the record or any proceedings in the action until a hearing is held on the closure in which all interested parties may be heard, and Judge Hoke enters an order assigning his reasons for granting the motion to close.

This Court issued a rule against the respondents directing them to show cause why a writ of prohibition should not be awarded as prayed for by the petitioner.

## II.

### STANDARD OF REVIEW

At the outset, we note that "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for [a petition for appeal] or certiorari." Syllabus Point 1, *Crawford v.. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953). *See also* W.Va.Code § 53–1–1 (1923). Also,

[i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or

---

**2.** *Consistent with our practice, we identify the juvenile involved in this case by initials only. See Matter of Jonathan P., 182 W.Va. 302, 303, n. 1, 387 S.E.2d 537, 538, n. 1 (1989).*

**3.** Also, consistent with our practice in cases involving sensitive matters, we use this respondent's last initial rather than his last name. *See Benjamin v. Orkin Exterminating Company, Inc.*, 182 W.Va. 615, n. 1, 390 S.E.2d 814, n. 1 (1990) (citation omitted).

substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). With these precepts to guide us, we now consider the issue before us.

## III.

## DISCUSSION

The question in this case is whether Judge Hoke properly closed the proceedings and sealed the file in the action below. In order to answer this question, we will first review the law concerning the closure of court proceedings. The United States Supreme Court expressly has held that there is a guaranteed right of the public under the First and Fourteenth Amendments to attend criminal trials. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (holding that state statute that requires trial judges at trials for specified sexual offenses involving a victim under the age of 18 to exclude the press and general public from the courtroom during the testimony of that victim violates the First Amendment to the Constitution). This right is not absolute.

> But the circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one. Where ... the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental

interest, and is narrowly tailored to serve that interest.

*Globe Newspaper Co. v. Superior Court*, 457 U.S. at 606–607, 102 S.Ct. at 2620, 73 L.Ed.2d at 257 (1982) (citations omitted). Although the Supreme Court has never held expressly that there is a constitutional right of access to civil trials, it has stated that "historically both civil and criminal trials have been presumptively open." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580, n. 17, 100 S.Ct. 2814, 2829, n. 17, 65 L.Ed.2d 973, 992, n. 17 (1980).[4]

■ This Court also has found that the public has a constitutional right to attend criminal trials. In Syllabus Point 1 of *State ex rel. Herald Mail Co. v. Hamilton*, 165 W.Va. 103, 267 S.E.2d 544 (1980), we held, in part, that "[a]rticle III, Section 14 of the West Virginia Constitution, when read in light of our open courts provision in Article III, Section 17, provides a clear basis for finding an independent right in the public and press to attend criminal proceedings." We concluded in *Hamilton* that this public right of access extends to pretrial hearings in criminal cases.

■ While we have never expressly held that there is a public right of access to civil proceedings under our state constitution, we have intimated as much. Article III, § 17 of the Constitution of West Virginia states:

> The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay.

In *Hamilton, supra*, we opined that an important purpose of the open-court provision of our state constitution is to permit the public to attend both civil and criminal trials. We further recognized that "[t]he uniform interpretation of the mandate that the courts

---

**4.** In *Webster Groves School Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1377 (8th Cir.1990), the United States Court of Appeals stated that "[t]he Supreme Court never has found a First Amendment right of access to civil proceedings or to the court file in a civil proceeding." In *In re Iowa Freedom of Information Council*, 724 F.2d 658, 661 (8th Cir.1983), the court reasoned:

> Arguably, the public interest in securing the integrity of the fact-finding process is greater in the criminal context than the civil context, since the condemnation of the state is involved in the former but not the latter, but it is nonetheless true that the public has a great interest in the fairness of civil proceedings.

'shall be open' by those state courts called upon to construe the [open courts] provision in their constitutions is that this language confers an independent right on the public to attend civil and criminal trials, and not simply a right in favor of the litigants to demand a public proceeding." *State ex rel. Herald Mail Co. v. Hamilton,* 165 W.Va. at 110, 267 S.E.2d at 548 (citations omitted). Accordingly, we now hold that the open courts provision of Article III, Section 17 of the Constitution of West Virginia guarantees a qualified constitutional right on the part of the public to attend civil court proceedings.

We believe this holding is in accord with our previous decisions mandating open proceedings in various contexts. This Court has stated that the "fundamental constitutional right of access is not limited to formal trials, but extends to other types of judicial and quasi-judicial proceedings." *Daily Gazette v. Committee on Legal Ethics,* 174 W.Va. 359, 364, 326 S.E.2d 705, 710 (1984). In Syllabus Point 4 of *Committee on Legal Ethics,* we held that "[u]nder West Virginia Constitution art. III, § 17, which provides that 'The courts of this State shall be open,' there is a right of public access to attorney disciplinary proceedings." Also, in *Daily Gazette Co. v. West Va. Bd. of Medicine,* 177 W.Va. 316, 352 S.E.2d 66 (1986) we determined that once the State Board of Medicine finds probable cause to substantiate charges of disciplinary disqualification, the proceedings on the charges shall be open to the public.

■ Having reviewed the law on the closure of presumptively open court proceedings, we will now briefly discuss the law concerning the sealing of court records. The United States Supreme Court has stated that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial documents and records." *Nixon v. Warner Communications,* 435 U.S. 589, 597, 98 S.Ct. 1306,

1312, 55 L.Ed.2d 570, 579 (1978) (footnotes omitted). Several courts have acknowledged a strong presumption in favor of the common law right to inspect and copy judicial records. *See Phoenix Newspapers v. U.S. District Court,* 156 F.3d 940 (9th Cir.1998); *Valley Broadcasting Co. v. United States Dist. Court,* 798 F.2d 1289 (9th Cir.1986); *United States v. Edwards,* 672 F.2d 1289 (7th Cir. 1982). The presumption of public access to court records exists in this state. According to W.Va.Code § 51–4–2 (1923), "[t]he records and papers of every court shall be open to the inspection of any person, and the clerk shall, when required, furnish copies thereof, except in cases where it is otherwise specially provided." This Court held in Syllabus Point 2, in part, of *Richardson v. Town of Kimball,* 176 W.Va. 24, 340 S.E.2d 582 (1986) that "[u]nless a statute provides for confidentiality, court records *shall* be open to public inspection."[5] It is clear from the above that the court records of civil and criminal proceedings are presumptively open.[6]

We have thus far determined that civil and criminal court proceedings and court records are presumptively open. As noted above, however, there are circumstances in which court records may be closed. This is likewise true of court proceedings. In the context of criminal proceedings, we have determined that the public's right of access is limited by the defendant's right to a fair trial. According to Syllabus Point 1 of *Hamilton, supra,* in part, "there are limits on access by the public and press to a criminal trial, since in this area a long-established constitutional right to a fair trial is accorded the defendant." This Court further stated in Syllabus Point 2 of *Hamilton:*

On a closure motion, the ultimate question is whether, if the pretrial hearing is left open, there is a clear likelihood that there will be irreparable damage to the defendant's right to a fair trial. Factors

5. We note the promulgation by this Court of new Trial Court Rule 10.03, effective July 1, 1999, which provides in part:

(a) Nature of Order. Upon motion by either party named in any civil action, the court may limit access to court files. The order of limitation shall specify the nature of the limitation, the duration of the limitation, and the reason

for the limitation. Upon motion filed with the complaint, accompanied by a supporting affidavit, limitation of access may be granted ex parte.

6. Concerning access to public records generally, see our state's Freedom of Information Act, W.Va.Code §§ 29B–1–1 to 29B–1–7.

bearing on the issue of irreparable damage include the extent of prior hostile publicity, the probability that the issues involved at the pretrial hearing will further aggravate the adverse publicity, and whether traditional judicial techniques to insulate the jury from the consequences of such publicity will ameliorate the problem.

A standard to govern the closure of civil proceedings has not been articulated by this Court. Therefore we look to other courts for guidance. In the recent case of *Virmani v. Presbyterian Health Services Corp.*, ── N.C. ──, 515 S.E.2d 675 (1999), the Supreme Court of North Carolina held that the open courts provision of that state's constitution guarantees a qualified public right of access to civil proceedings, but that the right is limited by the interest of the fair administration of justice or other compelling public purposes.[7] The court in *Virmani* further explained:

> [A]lthough the public has a presumptive right of access to civil court proceedings and records, the trial court may limit this right when there is a compelling countervailing public interest and closure of the court proceedings or sealing of documents is required to protect such countervailing public interest. In performing this analysis, the trial court must consider alternatives to closure. Unless such an overriding interest exists, the civil court proceedings and records will be open to the public. Where the trial court closes proceedings or seals records and documents, it must make findings of fact which are specific enough to allow appellate review to determine whether the proceedings or records were required to be open to the public by virtue of the constitutional presumption of access.

*Virmani*, ── N.C. at ──, 515 S.E.2d at 693. *See also Barron v. Florida Freedom Newspapers, Inc.*, 531 So.2d 113 (Fla.1988).[8] This rule is consistent with our prior statement in *Daily Gazette v. Committee On Legal Ethics*, 174 W.Va. at 364, n. 9, 326 S.E.2d at 711, n. 9, that,

> the public's right of access [to the courts found in Article III, Section 17 of the Constitution of West Virginia] is not absolute. Certain cases and exceptional circumstances may warrant limited closure. However, the public's right of access should never be arbitrarily or summarily denied. When the closure arises, the trial court should make a careful inquiry into the matter, affording all interested parties an opportunity to be heard. (Citations omitted).

Accordingly, we hold that the qualified public right of access to civil court proceedings guaranteed by Article III, Section 17 of the Constitution of West Virginia is not absolute and is subject to reasonable limitations imposed in the interest of the fair administration of justice or other compelling public policies. In performing this analysis, the trial court must first make a careful inquiry and afford all interested parties an opportu-

---

7. North Carolina Const. art. I, § 18 states:

> All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay.

8. In *Barron*, the Florida Supreme Court set forth a test for determining the propriety of closure. The court first determined that the strong presumption of openness for all court proceedings mandates that the burden of proof shall always be on the party seeking closure. Second, the public and news media shall have standing to challenge any closure order.

> Third, closure of court proceedings or records should occur only when necessary (a) to comply with established public policy set forth in the constitution, statutes, rules, or case law; (b) to protect trade secrets; (c) to protect a compelling governmental interest [e.g., national security; confidential informants]; (d) to obtain evidence to properly determine legal issues in a case; (e) to avoid substantial injury to innocent third parties [e.g., to protect young witnesses from offensive testimony; to protect children in a divorce]; or (f) to avoid substantial injury to a party by disclosure of matters protected by a common law or privacy right not generally inherent in the specific type of civil proceeding sought to be closed....

> Fourth, before entering a closure order, the trial court shall determine that no reasonable alternative is available to accomplish the desired result, and, if none exists, the trial court must use the least restrictive closure necessary to accomplish its purpose.

nity to be heard. The trial court must also consider alternatives to closure. Where the trial court closes proceedings or seals records and documents, it must make specific findings of fact which are detailed enough to allow appellate review to determine whether the proceedings or records are required to be open to the public by virtue of the constitutional presumption of access.

Up to this point our discussion has concerned only those judicial or quasi-judicial proceedings and court records that are presumptively open. At this juncture, however, we must emphasize that all proceedings and records are not presumptively open to the public. The legislature, by statute, and this Court, by rule, have mandated that some types of proceedings and records shall be closed. For example, actions for divorce, annulment and separate maintenance are heard in chambers, not open court. W.Va. Code § 48–2–24 (1969). Further, all pleadings, exhibits or other documents contained in the court files of domestic relations cases, including actions for divorce, annulment, separate maintenance, paternity, child support, custody, visitation, actions brought under the provisions of the uniform interstate family support act and petitions for writs of habeas corpus wherein the issue is child custody, "are confidential and not open for public inspection either during the pendency of the case or after the case is closed." W.Va.Code § 48–2–27 (1997). *See also* Rule 39 of the *West Virginia Rules of Practice & Procedure For Family Law* (1999). In addition, all

records of proceedings in adoption cases are sealed. W.Va.Code § 48–4–10 (1991).[9]

The case before us involves a juvenile. This state generally protects the confidentiality of juveniles by mandating that judicial proceedings and court records concerning juveniles are closed to the public. We have stated that "the law treats juveniles differently than others. 'From the earliest time infants were regarded as entitled to special protection from the State.'" *Ogden Newspapers, Inc. v. City of Williamstown,* 192 W.Va. 648, 654, 453 S.E.2d 631, 637 (1994), *quoting State v. Boles,* 147 W.Va. 674, 678, 130 S.E.2d 192, 195 (1963). It is well-settled that this state has a very high interest in keeping juvenile information confidential. *See Ogden Newspapers, Inc., supra.* To further this interest, the legislature has enacted various statutes concerning the confidentiality of juvenile proceedings and records. W.Va.Code § 49–5–2(i) (1998) provides that proceedings under the juvenile jurisdiction of circuit courts shall be closed to the general public. Records of these proceedings are not public records, W.Va.Code § 49–5–17 (1997), and are sealed by the court. W.Va.Code § 49–5–18 (1997).[10] In addition, W.Va.Code § 49–7–1(a) (1998) requires that "all records and information concerning a child or juvenile which are maintained by the state department [of health and human resources] … a child agency or facility, court of [sic] law-enforcement agency shall be kept confidential and shall not be released or disclosed to anyone, including any federal or state agency."[11] The confidentiality of juvenile records

---

*Barron,* 531 So.2d at 118.

9. We note that this is not an exhaustive list of proceedings and court records that are closed to the public.

10. Note, however, Syllabus Point 2 of *State ex rel. Register–Herald v. Canterbury,* 192 W.Va. 18, 449 S.E.2d 272 (1994) in which we stated:

A court order that prohibits publication of information relating to the acts, diagnosis, and treatment of an individual who is no longer a minor, but was at the time of treatment, constitutes an impermissible prior restraint, provided such document was lawfully obtained by the newspaper.

11. See, however, Syllabus Point 2 of *Ogden Newspapers, Inc. v. City of Williamstown,* 192

W.Va. 648, 453 S.E.2d 631 (1994), in which we held:

When incidents affecting public safety and welfare can be publicized without revealing the identities of juveniles involved by means other than the application of a blanket rule of nondisclosure, an incident report should be released to the press with the names of any juveniles (along with any information that could reasonably lead to the discovery of the identity of the juveniles) redacted; redaction offers the least intrusive means of protecting the identity of juveniles, while respecting the right of the public under the West Virginia Freedom of Information Act, *W.Va.Code,* 29B–1–1 [1977] *et seq.*

We further held in Syllabus Point 3:

Broadly defining juvenile records to include redacted incident reports is not necessary to

is so important that it is a misdemeanor to violate W.Va.Code §§ 49–5–17, 49–5–18 and 49–7–1. Finally, this Court does not use the last names of juvenile parties in opinions. *See Matter of Jonathan P.*, 182 W.Va. 302, 387 S.E.2d 537 (1989).

■ The right of privacy is a precious right which all Americans fiercely and jealously guard. It is also being dangerously eroded day by day. In an age when privacy rights generally are under attack and intrusiveness is facilitated by technological advances of both business and government, we are loathe to allow one of the last bastions of privacy, juvenile confidentiality, to be diminished in the least bit. We hold, therefore, that this state recognizes a compelling public policy of protecting the confidentiality of juvenile information in all court proceedings.

■ In the instant case, much of the evidence is based on the education records of a juvenile. Even though W.Va.Code § 49–7–1 concerns particularly adoption records, juvenile court records and records disclosing the identity of a complainant in a child abuse and neglect proceeding, the same policy considerations are applicable. *See Nelson v. Ferguson*, 184 W.Va. 198, 399 S.E.2d 909 (1990) (holding in Syllabus Point 4 that "[w]hen a child's mental health records are sought to be produced, and the child is not directly represented in the proceeding, the child should be joined as a party and a guardian *ad litem* must be appointed by the circuit court to protect the child's rights."). Further, it is the policy of the Kanawha County Board of Education and the State of West Virginia Board of Education to keep all student education records confidential.[12] Specifically, 126 C.S.R. 94–2.2 (1982) provides:

> protect the identity of the juveniles and to preserve the confidentiality of their records.

**12.** The *Procedures for the Collection, Maintenance and Disclosure of Student Data*, published by the West Virginia Department of Education (approved August 1978 and reprinted November 1980) provides in Section 16(1)(a) that "[a]n educational agency or institution shall obtain the written consent of the parent of a student or the eligible student before disclosing personally iden-

The Procedures limit collection and disclosure of information relating to students which is individually identifiable, generally requiring consent of the parents for disclosure and collection, except when collection is a normal part of the educational program. Disclosure requires consent of the parents, except when for release of directory information or in specific circumstances. Students and parents have the right to review such information, and procedures are established to amend the records when found to be inaccurate and to challenge disclosures which are in violation of the policy.

This rule is derived from language contained in the Family Education and Privacy Rights Act (FERPA), 20 U.S.C. 1232g (1994). According to 20 U.S.C. 1232g(b)(2):

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection, unless—
>
> (A) there is written consent from the student's parents specifying records to be released, the reasons for such release, and to whom, and with a copy of the records to be released to the student's parents and the student if desired by the parents, or
>
> (B) except as provided in paragraph (1)(J), such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance

tifiable information from the education records of a student, other than directory information, except as provided[.]"

Also, according to Kanawha County Board of Education Policy 19.07 (Series J19; Issued 09/21/89 and revised 02/18/99), "[t]he [school] District shall not disclose personally identifiable information from a student's education records, absent written consent of the parents or eligible student" except in specifically enumerated circumstances.

therewith by the educational institution or agency.[13] (Footnote added).

According to the pleadings, the evidence below also includes medical records which may be confidential under the Individuals with Disabilities Education Act· ("IDEA"), 20 U.S.C. §§ 1400 to 1491o (1994). The purpose of the IDEA is to assure that all children with disabilities have access to a free and appropriate public education designed to meet their special needs.[14] According to § 1417(c):

> The Secretary [of Education] shall take appropriate action, in accordance with the provisions of section 1232g [see supra] of this title, to assure the protection of the confidentiality of any personally identifiable data, information, and records collected or maintained by the Secretary and by State and local educational agencies pursuant to the provisions of this subchapter. (Footnote omitted).

It is clear from the above that some court proceedings and records are closed and confidential by statute and by policy of this Court, including judicial proceedings and court records relating to juveniles. Further federal statute and state education regulations and policy generally provide, with limited exceptions, for the confidentiality of students' education records. Accordingly, when education records are introduced as evidence in court proceedings which are presumptively open to the public, the trial court must take measures necessary to protect the confidentiality of the records.

Having set forth the applicable law in this case, we will now briefly review the positions put forth by the several parties to this prohibition proceeding. The petitioner avers that the action below is not a juvenile proceeding controlled by statute, but rather a civil hearing which is presumptively open to the public and the press. Therefore, Judge Hoke should convene a public hearing so that the issue of closure can be addressed by all interested. If confidential information is involved, only those portions of the proceedings or record necessary to protect this information should be closed. Finally, the petitioner asserts that Judge Hoke should issue an order containing particularized determinations regarding closure.

Respondents C.C.F. and William C.F. counter that the hearing and record below were properly closed because educational, disciplinary and other sensitive records are involved which federal law and state regulations clearly require to be kept confidential. Further, because the action below is not a criminal proceeding, there is no federal or state constitutional right to public access involved. Respondents Board of Education of Kanawha County and Dr. Ronald Duerring agree that because the action arose out of a school disciplinary procedure and concerns education records, it should be closed to the public.[15] Finally, Judge Hoke states essentially that he closed the proceeding and record below because the issues and evidence are directly founded upon confidential records.[16]

---

**13.** No private right of action exists under FERPA. *Tarka v. Franklin*, 891 F.2d 102 (5th Cir. 1989), *cert. denied*, 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 940 (1990). However, violation of FERPA may be the basis of a civil rights claim under 42 U.S.C. § 1983. *Doe v. Knox County Bd. Of Educ.*, 918 F.Supp. 181 (E.D.Ky. 1996).

**14.** According to the IDEA at 20 U.S.C.A. § 1401(3)(A) (1999 supp.):

The term "child with a disability" means a child-

(i) with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance, orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and

(ii) who, by reason thereof, needs special education and related services.

**15.** Respondent Cathy S. Gatson, Clerk of the Circuit Court of Kanawha County filed pleadings in this Court in which she states that Judge Hoke directed that the entire file in the action below be sealed, and that, according to *Rutledge v. Workman*, 175 W.Va. 375, 332 S.E.2d 831 (1985), she is bound by this order pending the decision of this Court. Also, the Attorney General filed a pleading in this Court in which he argued that the proceeding and record below were properly closed because of the State's strong public policy of protecting the privacy of juveniles.

**16.** In his response to this Court, Judge Hoke states:

While I have not been allowed to reduce this determination to a written order by this pro-

■ In order to decide the issue before us, we must first determine whether the proceedings held in the action below are presumptively open or whether they are closed pursuant to a specific statute, regulation or rule. The petitioner states in its brief to this court that in the underlying action,[17] the plaintiffs below, C.C.F. and William C.F. sought monetary damages against, *inter alia,* the Kanawha County School Board and an injunction against the Board's use of suspensions to discipline students except in cases of violent behavior.[18] In his response, Judge Hoke states that the action was brought pursuant to Rule 65 of the *West Virginia Rules of Civil Procedure.*[19] It is stated elsewhere in the pleadings that the action arose out of a disciplinary procedure and was filed to challenge certain disciplinary actions taken against Respondent C.C.F. Although many of the respondents characterize the action below as a *de facto* juvenile proceeding, they do not point to a specific statute mandating confidentiality which governs the action. That is, the action does not involve domestic relations, nor was it brought under the juvenile jurisdiction of the trial court. Because the action is not specifically closed by statute, regulation or rule, we conclude that proceedings held in the action are presumptively open to public access.[20] We emphasize, however, as discussed *infra,* that the action below involves issues which will necessitate an evidentiary exposition which will include education records which are confidential.

As stated above, although the public has a presumptive right of access to a proceeding, the trial court may limit this right when there is a compelling countervailing public interest and closure of the court proceedings or sealing of the documents is required to protect that interest. A compelling countervailing public interest in this case is the confidentiality of juvenile education records. The bulk of the evidence in the action below concerns these records which are unquestionably confidential. Federal law absolutely mandates the confidentiality of these records. State regulations absolutely mandate the confidentiality of these records. Written state and county board of education policies absolutely demand the confidentiality of these records. Finally, Court decisions absolutely demand the confidentiality of these records. We note that if the Kanawha County Board of Education were to abandon its policy of protecting the confidentiality of student records, it could lose its federal funding under FERPA.[21]

ceeding, in my mind the Plaintiffs wished to close this proceeding and the Defendants expressly had no objection based upon the following rational [sic]:

(1) This was an equitable proceeding brought on behalf of a child, pursuant to the applicable provisions of WVRCP Rule 65 (under the 1998 amendments); and,

(2) The issues and the evidence was [sic] directly founded upon: (a) a child's school records; (b) a child's class grades; (c) a child's disciplinary proceedings; (d) a child's medical records; and (e) a child's medical, psychological and psychiatric conditions[.]

**17.** Petitioner's counsel states that he has not seen the complaint because it was ordered sealed. However, it was for a brief time available for inspection in the office of Clerk Gatson and its substance was reported to him.

**18.** We note in passing that this Court shares the petitioner's concern about the practice of suspending students who are absent or tardy. Frankly, we find this an absurd practice. It seems to us that suspending students who are repeatedly tardy or absent, rather than serving as punishment, gives them what they want. Accordingly, a policy which better tailored the punishment to fit the crime would seem to make far more sense and be more effective. For example, perhaps students who are excessively tardy or absent should be made to stay after regular school hours or attend school on Saturday. However, not only is this issue not before us, but it is not properly within our authority to determine the wisdom or lack thereof of the school board's disciplinary rules.

**19.** W.Va.R.Civ.P. 65 concerns injunctions.

**20.** We note here that we do not have the record in the action below before us. Rule 14(f) of the *West Virginia Rules of Appellate Procedure* (1999) provides, rather, that in original jurisdiction proceedings before this Court "[t]he record shall consist of the pleadings, the addenda, the appendices, depositions filed under Rule 14(d), and findings of fact made under Rule 14(e)." In the instant case, no depositions or findings of fact are included in the record.

**21.** This Court is aware of the fact that teachers and other board of education personnel have made public comments about the juvenile involved in this case and his records. We believe that such commentary breaches these employees' duty of confidentiality and, if unrestrained, cre-

The petitioner acknowledges that confidential records are involved in this case, but argues that this information can be redacted so that the remainder of the file and the proceedings can be open. We disagree. We have carefully examined the pleadings and the attached exhibits which describe the nature and extent of the confidential information involved in the action below. The action below primarily concerns a juvenile. The Supreme Court has confirmed that "safeguarding the physical and psychological well-being of a minor" is a "compelling" state interest. *Globe Newspaper Co.,* 457 U.S. at 607, 102 S.Ct. at 2620, 73 L.Ed.2d at 258 (footnote omitted). Applying the standard set forth above to this information, we conclude that the petitioner's and the public's interest in this case is overwhelmingly outweighed by the state's interest in protecting C.C.F. from the public dissemination of sensitive information which could be potentially injurious. In addition, we believe that partial closure or redaction of the court record would be practically impossible due to the fact that sensitive information concerning C.C.F. will make up the vast amount of evidence brought forth in the action. Therefore, we believe there is no alternative to closure. Finally, we are persuaded by the fact that courts everywhere protect the identity of juveniles who commit crimes such as murder, rape and robbery. The juvenile involved in the instant case is an innocent child and surely deserves no less protection. How ironic it would be if this Court made a rule that guarded the privacy of a juvenile rapist or robber but refused to guard the privacy of a child who has committed absolutely no crime at all. Accordingly, we find that the trial court's order closing the proceedings and sealing the record in the action below is not erroneous as a matter of law and that the trial court did not exceed it legitimate powers.

In closing, we note that while Judge Hoke did not afford all interested parties an opportunity to be heard prior to closure and failed to timely assign his reasons for granting closure, part of the relief sought was extraordinary and had to be acted upon quickly. Further, Judge Hoke can hardly be blamed for acting on the side of caution in protecting the confidentiality of juvenile information. If the confidential information were to become public, obviously it could not be recalled.[22] In any case, the views of all the interested parties have been heard and addressed in this Court pursuant to this proceeding in prohibition. Also, as noted above, we have reviewed Judge Hoke's reasons for closing the proceedings, and we have published them in this opinion along with this Court's reasoning in deciding the issue before us. Accordingly, we deem this matter to be concluded.

## IV.

## CONCLUSION

For the reasons set forth herein, the writ of prohibition is denied.

Writ denied.

---

ates a very real threat of loss of all federal funding for Kanawha County Schools.

**22.** When potentially confidential information is involved in an action which is presumptively open, the better practice is to open the initial hearing to the public so that the motions concerning confidentiality can be made publicly, and all interested parties are given the opportunity to be heard on the issue.