543 S.E.2d 659

**WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, Petitioner Below, Appellant,**

v.

**William and Gayle CLARK, Individually and D/B/A Miracle Meadows School, Respondents Below, Appellees.**

**No. 27915.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 4, 2000.

Decided Dec. 12, 2000.

Darrell V. McGraw, Jr., Esq., Attorney General, Charleston, Rocco S. Fucillo, Esq., Assistant Attorney General, Fairmont, for Appellant.

Jerald E. Jones, Esq., West & Jones, Clarksburg, for Appellees.

**PER CURIAM:**

This case is before this Court upon appeal of a final order of the Circuit Court of Ritchie County entered on January 7, 2000. In that order, the circuit court denied a petition filed by the appellant and petitioner below, the West Virginia Department of Health and Human Resources (hereinafter "DHHR"), to compel the appellees and respondents below, William and Gayle Clark, individually, and d/b/a Miracle Meadows School, to produce medical and school records of the students enrolled at Miracle Meadows School in connection with an ongoing investigation concerning allegations of abuse and neglect. The DHHR also requested that the appellees be required to produce the students and staff of Miracle Meadows School for interviews with its investigators. In this appeal, the DHHR contends that pursuant to W. Va. Code § 49–6A–1 to 10 (1977), the circuit court should have ordered the appellees to cooperate with its investigation.

This Court has before it, the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order of the circuit court is affirmed.

### I.

On April 16, 1999, the DHHR sought ratification, removal, and temporary custody of four students that were in the care and custody of the Miracle Meadows School. The school is a private facility located in Harrison County, West Virginia,[1] and is operated by a private, not-for-profit corporation.[2] Gayle and William Clark are employed by the corporation as director and pastor of the school. Most of the children that attend the school have behavioral problems and are from out of state. Their parents sign temporary custody agreements providing that Miracle Meadows has temporary custody of their children and the right to seek medical attention for them.

The agreement further provides that the children will remain at Miracle Meadows for a minimum of one year and that the school will regulate all contact between the students and their parents. Given these circumstances, the DHHR considers the Clarks along with the staff of Miracle Meadows to be the legal custodians of all students enrolled in the school.

The DHHR's petition for custody was filed after two female students of Miracle Meadows, Shannon M.[3] and Sheayan M., reported that they had been sexually abused by a staff member. The girls disclosed the abuse when they were picked up by the state police after running away from the school on April 13, 1999. The girls were returned to the school after it was agreed that the staff member who allegedly abused them would not be permitted back onto the school campus until the DHHR had completed an investigation.

Shortly thereafter, the school contacted the DHHR and reported that the girls had recanted their allegations concerning the sexual abuse. Upon receiving this information, an investigator for the DHHR and a member of the state police returned to the school to question the girls again. At that time, the girls reported that they had been pressured by the school's staff and forced to recant their stories. Both girls indicated that they were afraid to remain at the school. Thus, the DHHR took temporary custody of Shannon M. and Sheayan M.

Upon further investigation, the DHHR determined that two other children at the school had been placed in imminent danger. In particular, the DHHR alleged that Christopher B. had been placed in a five-foot by five-foot secured room and forced to sleep on the floor for a night with a space heater. It was also alleged that Aaron E. had been beaten with a board by the same staff member who allegedly sexually abused Shannon M. and Sheayan M. Both of the boys were removed from the school.

---

1. The school has a second location in Ritchie County, West Virginia, where the school's director and pastor reside.

2. Miracle Meadows School is closely associated with the Seventh Day Adventist Church and is operated under Exemption K of W. Va.Code § 18–8–1 (1995).

3. We follow our past practice in juvenile and domestic relations cases involving sensitive matters and use initials to identify the children's last names. *In the Matter of Jonathan P.,* 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

Subsequently, the DHHR filed a petition with the Circuit Court of Ritchie County to compel the appellees to provide the school and medical records of all students enrolled at Miracle Meadows School, and to further produce the students and staff for interviews with the DHHR in connection with its investigation of the allegations of abuse and neglect. An evidentiary hearing on the petition was held on July 29, 1999. After hearing the evidence and considering the memoranda, the circuit court ordered the appellees to produce the requested records for an in camera inspection by the court. The hearing was then recessed until August 3, 1999, when the parties presented their arguments to the circuit court. At that time, the DHHR also informed the court of new allegations concerning another student, Renee S. After considering the arguments, the court directed the DHHR to pursue the allegations concerning Renee S. in Harrison County. The court further ruled that there was no provision in W.Va.Code § 49-1-1, *et seq.*, authorizing the relief sought by the DHHR. The court stated that to require the appellees to provide the requested information would result in a violation of their constitutional rights against self-incrimination, as the information revealed by the records and interviews could result in criminal prosecution.[4]

## II.

■ We begin our analysis of this case by noting that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). As this Court further explained in Syllabus Point 4 of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996): "This Court reviews the circuit court's final order

and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*"

The issue in this case is whether the circuit court erred by refusing to order the appellees to submit the school and medical records of all students attending Miracle Meadows to the DHHR and to further order the appellees to make their students and staff available for interviews. The DHHR contends that it is entitled to this information pursuant to W.Va.Code § 49-6A-9 because it is investigating allegations of abuse and neglect. In response, the appellees argue that the circuit court's order was proper especially in light of the numerous letters written by the parents of the students stating that they did not want their children's records released to the DHHR.

■ After reviewing the record, we conclude that the DHHR certainly had a duty to investigate the abuse and neglect allegations in this case. However, we do not find that the DHHR was entitled to review the school and medical records of the students who were not the subject of the abuse and neglect petition. Thus, we affirm the decision of the circuit court, but for different reasons.[5]

This Court has previously stated that "[a]s a matter of public policy, the mental health records of children should be treated with particular care to protect the child." *Nelson v. Ferguson*, 184 W.Va. 198, 202, 399 S.E.2d 909, 913 (1990). In *Nelson*, this Court recognized that although medical records do not belong in the same class as highly confidential juvenile records, the same policy concerns that keep juvenile records confidential[6] are applicable. *Id.* "Unfortunately, mental disease often carries with it a stigma similar to that associated with a criminal record" and to protect children from this stigma, their records should remain confidential *Id.*

---

4. It is noted that the circuit court did order the appellees to produce all medical records in their possession relating to Shannon M., Sheayan M., Christopher B., and Aaron E. and to provide a list of the health care providers who may have rendered medical services to these children.

5. The circuit court concluded that the appellees did not have to produce the records because it would violate their right against self-incrimina-

tion as the information revealed might lead to criminal prosecution. However, we believe that the appellees' constitutional rights were sufficiently protected by W.Va.Code § 49-6-4 (1984), and therefore, decline to uphold the circuit court's ruling on that basis. *See State v. James R. II*, 188 W.Va. 44, 422 S.E.2d 521 (1992).

6. See W.Va.Code § 49-7-1(1999).

**106**

In Syllabus Point 7 of *State ex rel. Garden State Newspapers, Inc. v. Hoke*, 205 W.Va. 611, 520 S.E.2d 186 (1999), this Court declared that: "This state recognizes a compelling public policy of protecting the confidentiality of juvenile information in all court proceedings." In that case, this Court discussed the need to keep a student's educational records confidential when they are introduced as evidence in court proceedings which are presumptively open to the public. This Court explained that "federal statute and state education regulations and policy generally provide, with limited exceptions, for the confidentiality of students' education records." 205 W.Va. at 620, 520 S.E.2d at 195.

As noted above, the students enrolled at Miracle Meadows are troubled children who apparently have been unable to successfully attend school elsewhere. Miracle Meadows is, in effect, a parochial alternative school. The record in this case contains numerous letters from the parents of these students praising the school and staff for helping their children and expressing disapproval of the DHHR's investigation. For instance, one letter reads:

We have a concern regarding a hearing called by DHHR to have interviews of staff and students and access to school records.... If we felt that [our] daughter was not in a safe environment we would have pulled her out long ago or she would have urged us to take her out.... Our desire for you is to ... deny DHHR access to school records and interviews of the staff and students.

Another parent wrote:

This fine institution accomplishes exactly what its Name implies. It is a miracle that so many lives of these defiant children, most of who have little respect for any authority, can be turned around, so that they may lead meaningful lives and be contributing, caring citizens of our country.... I do not want the State involved, nor having access to my daughter's medical, dental, school transcripts, as they have become the property of Miracle Meadows School.

Yet another parent states:

We sent our son ... to Miracle Meadows School to teach him self-management. We are satisfied with the results.... We will not grant permission to have his records or any other records in possession by the school be made public.

As these letters illustrate, the parents of these students chose to send their children to Miracle Meadows and it is quite evident that they want their children's right of privacy protected. As we noted in *Garden State Newspapers*, "[t]he right of privacy is a precious right which all Americans fiercely and jealously guard." 205 W.Va. at 619, 520 S.E.2d at 194.

Our decisions in *Nelson* and *Garden State Newspapers* indicate that these children's records should in fact be kept confidential in accordance with their parents' wishes. However, we cannot ignore the DHHR's duty to investigate allegations of abuse and neglect. W.Va.Code § 49–6A–1 (1977) provides that: "It is the purpose of this article, through the complete reporting of child abuse and neglect, to protect the best interests of the child, to offer protective services in order to prevent any further harm to the child or any other children living in the home[.]" Given these circumstances, we find that absent probable cause to believe that these children were also abused and neglected, the DHHR does not have a right to review the children's medical and school records. Nonetheless, we believe that the DHHR does have the right to interview the children.

W.Va.Code § 49–6A–9 sets forth the general duties and powers of the DHHR and specifically directs that an investigation commence upon notification of suspected child abuse and neglect. As part of the investigation, the DHHR is instructed to interview the child or children within fourteen days of the commencement of the investigation. W.Va. Code § 49–6A–9(b)(3) (1994). In this case, the DHHR commenced an investigation after Shannon M. and Sheayan M. reported that they had been sexually abused at the school. As part of that investigation, the DHHR interviewed other children at the school and some members of the school's staff. Through these interviews, the DHHR determined that Christopher B. and Aaron E. had also been placed in imminent danger. Thus, the DHHR filed a petition to remove these two students from school.

The DHHR maintains that after these children were removed from the school, the appellees became less cooperative and as a result some the staff and children were not interviewed. Thus, they requested that the circuit court order the appellees to make the remaining children and staff available for interviews. After reviewing the record, we believe that the DHHR had ample opportunity to investigate the abuse and neglect allegations. The DHHR's investigators were at the school interviewing the students and staff from April 16, 1999 through April 20, 1999. The DHHR conducted further interviews on May 24 and 26, 1999 and on June 1, 2, and 10, 1999. There is every indication that the DHHR conducted a zealous and thorough investigation. Consequently, we see no basis for allowing the DHHR to conduct further interviews of the students and staff of Miracle Meadows.

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Ritchie County entered on January 7, 2000, is affirmed.

Affirmed.