# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 13-1138** (Jefferson County 09-F-14)

**Terry W. Jackson,**
**Defendant Below, Petitioner**

**FILED**

June 13, 2014

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

### MEMORANDUM DECISION

Petitioner Terry W. Jackson, by counsel Richard D. Stephens, appeals from the Circuit Court of Jefferson County following his conviction of incest and sentence to five to fifteen years in prison. The State of West Virginia, by counsel Brandon C. H. Sims, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's January 19, 2010, sentencing order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Facts

In January of 2009, petitioner was indicted on six felony charges. Counts I and II of the indictment alleged sexual abuse by a parent, guardian, or custodian; Counts III and IV alleged incest; and Counts V and VI alleged sexual assault in the second degree. Counts I, III, and V involved acts that were to alleged to have occurred in 2001, and Counts II, IV, and VI involved acts that were alleged to have occurred in 2003. The victim in each of the alleged offenses was petitioner's teenage biological daughter, A.B.

Count II was dismissed prior to trial without objection by the State,[1] and the State presented the remaining five charges at a jury trial on October 20, 2009. Petitioner was convicted of incest[2] as alleged in Count IV of the indictment and acquitted of the remaining charges. The

---

[1] Sexual abuse by a parent, guardian, or custodian, as set forth in West Virginia Code § 61-8D-5(a), requires the victim to be a child at the time of the offense. A.B. turned eighteen years old before the alleged sexual abuse occurred in 2003.

[2] West Virginia Code § 61-8-12 provides, in pertinent part, as follows:

1

circuit court denied petitioner's post-trial motions by order entered December 17, 2009, and sentenced petitioner to five to fifteen years in prison by order entered January 19, 2010.[3]

At trial, the State called A.B. to testify, as well as two detectives and an expert witness, who supervised DNA testing and opined that petitioner fathered a child by A.B. Petitioner testified in his own defense and also presented the testimony of Delores Jackson, his wife and A.B.'s stepmother at the time of the alleged events. A.B., who was sixteen and eighteen years old at the time of the alleged offenses, and twenty-four years old at the time of trial, testified that she did not know her father as a child because she was raised by her mother, maternal grandmother, and aunt and uncle in Berkeley County. After her relationship with her mother deteriorated, she sought out and eventually moved in with her father and his then wife, Ms. Jackson,[4] in Jefferson County.

A.B. testified that in June of 2001, shortly after she moved in with her father and Ms. Jackson, she and petitioner were watching television in the den when petitioner assaulted her.[5] Specifically, A.B. testified that petitioner "pinned me up against the side of the chair and put his hand up my shorts and touched my privates." A.B. testified that petitioner rolled on top of her, forced her pants off, and raped her. The jury acquitted petitioner of the charges stemming from these allegations.

A.B. testified that petitioner assaulted her again on or about November 16, 2003, while Ms. Jackson was at work. A.B. testified that she went into the kitchen and her father came "up behind me and put his hand over my mouth and forced me to the floor and forced my pants off and his pants off and raped me." A.B. testified that during the period of November and December 2003, she became pregnant and in mid-September 2004, gave birth to a boy, N.B. Although A.B. believed that her then-boyfriend was the father, a paternity test required as part of a petition for child support determined he was not the father. A.B. testified that, despite the results of the paternity test, she was in denial that petitioner could be the father of N.B. A.B.

---

(b) A person is guilty of incest when such person engages in sexual intercourse or sexual intrusion with his or her father, mother, brother, sister, daughter, son, grandfather, grandmother, grandson, granddaughter, nephew, niece, uncle or aunt.

(c) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than five years nor more than fifteen years, or fined not less than five hundred dollars nor more than five thousand dollars and imprisoned in the penitentiary not less than five years nor more than fifteen years.

[3] The parties indicate that the circuit court resentenced petitioner in October of 2013, for purposes of this appeal.

[4] Petitioner and Ms. Jackson divorced around 2005.

[5] A.B. testified that Ms. Jackson was asleep in a different room at the time of the alleged assault.

testified that she did not report either of the alleged sexual assaults committed by petitioner because she was afraid of him and feared that people would not believe her. A.B. eventually reported the alleged assaults in 2008.

To establish that petitioner fathered N.B., the State relied on the testimony of Kelly Beatty, a parentage analyst supervisor at Marshall University Forensic Science Center. Ms. Beatty tested buccal swabs with known samples from petitioner, A.B., and N.B., and compared those samples for parentage analysis. Ms. Beatty testified that based on her analysis of the DNA testing results, petitioner was 99.9999 percent certain to be the father of N.B.

At the end of the State's case-in-chief, petitioner moved for directed verdict for judgment of acquittal, which motion was denied. Petitioner and Ms. Jackson then testified. Petitioner denied any sexual contact with A.B, and the State did not cross-examine him. Ms. Jackson testified that A.B. never gave her any indication that anything had occurred between A.B. and petitioner.

Following the guilty verdict on the incest charge in Count IV of the indictment, petitioner moved for new trial and for judgment of acquittal, both of which motions were denied. The circuit court sentenced petitioner to five to fifteen years in prison, and this appeal followed.

**Discussion**

Petitioner raises four assignments of error on appeal. First, he challenges the circuit court's denial of his motion judgment of acquittal at close of State's case-in-chief and at the end of all the evidence. Petitioner contends that if the date of the sexual intercourse was on or about November 16, 2003, as alleged by the State in Count IV, then N.B. would have been born much earlier than mid-September 2004, given a normal forty-week gestation cycle. Citing a scientific journal, the State counters that the gestational cycle can vary from the typical forty weeks by as much as thirty-seven days. *See* Anne Marie Jukic, Donna D. Baird, Clarice R. Weinberg, D.R. McConnaughey, and Allen J. Wilcox, *Length of Human Pregnancy and Contributors to its Natural Variation*, 28 Oxford Journals: Human Reproduction (Issue 10) at pp. 2848-2855.

Petitioner essentially argues that the evidence at trial was insufficient to sustain his conviction of incest. With respect to alleged insufficiency of the evidence, we held as follows in Syllabus Points one and three of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995):

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the

evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Upon our review of the record in the present matter, we do not find that the evidence was insufficient to sustain petitioner's incest conviction. A.B. testified that the intercourse with petitioner occurred on or about November 16, 2003. If A.B.'s gestational cycle was forty-two weeks and five days, as hypothesized by the State, conception would have been on or about November 20, 2003, which is consistent with A.B.'s testimony. Moreover, the State's forensic scientist and expert witness testified that of the fifteen genetic markers tested to establish paternity, petitioner could not be excluded in any of them. The expert testified that petitioner was 2,482,848 times more likely than a random man from the same ethnic group to be the father of N.B. She addressed the fact that some DNA would be shared between petitioner and N.B. due to the grandfather relationship, but at most it would be one-fourth. The pattern of DNA established with 99.9999 percent certainty that that petitioner was N.B.'s father. Given the scientific evidence that petitioner fathered N.B., and based on the standard of review set forth in *Guthrie,* we believe the evidence was sufficient to sustain petitioner's conviction.

Petitioner's second assignment of error is that the circuit court erred in denying his motion for a new trial. Rule 33 of the West Virginia Rules of Criminal Procedure states as follows:

> The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony, and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within ten days after verdict or finding of guilty or within such further time as the court may fix during the ten-day period.

Specifically, petitioner argues that the circuit court improperly denied his request to examine A.B.'s medical records from her hospitalization due to stress caused by the pending trial; the circuit court allowed the State to lead the expert witness and essentially read the DNA test results into the record; there may have been juror misconduct as evidenced by the fact that the jury completely acquitted petitioner on all counts except for incest stemming from the 2003 sexual contact.

We disagree with petitioner that he is entitled to a new trial. Denial of a motion for new

trial is not subject to appellate review unless the trial judge abuses his or her discretion. *See State v. White,* 228 W.Va. 530, 722 S.E.2d 566 (2011). With respect to A.B.'s medical records, the circuit court reviewed them in camera prior to denying petitioner's motion to review them. The court reviewed the records and determined there was no probable cause to believe they raised any issue regarding A.B.'s competency to testify. Petitioner cites no authority to suggest the court abused its discretion.

Regarding the State's alleged leading of the expert witness, Rule 611(c) of the West Virginia Rules of Evidence provides that

> [l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily, leading questions should be permitted on cross-examination. *When a party calls* a hostile witness, an adverse party, a witness identified with an adverse party, or *an expert witness, interrogation may be by leading questions.*

(Emphasis added). In addition, "[t]he allowance of leading questions rests largely in the discretion of the trial court, and absent an abuse of such discretion, the trial court's ruling will not be disturbed." Syl. Pt. 6, *State v. Fairchild,* 171 W.Va. 137, 298 S.E.2d 110 (1982). Petitioner fails to explain how the State's method of questioning Ms. Beatty amounted to an abuse of discretion.

With respect to petitioner's contention that there may have been juror misconduct because of the inconsistent verdicts, that argument has been soundly rejected. In *United States v. Powell,* 469 U.S. 57, 65-66 (1984), the United States Supreme Court stated that

> inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause. See *Green v. United States,* 355 U.S. 184, 188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); *Kepner v. United States,* 195 U.S. 100, 130, 133, 24 S.Ct. 797, 804, 805, 49 L.Ed. 114 (1904).
>
> Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course. . . . For us, the possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest. This possibility is a premise of *Dunn* [*v.*

*United States,* 284 U.S. 390 (1932)]'s alternative rationale—that such inconsistencies often are a product of jury lenity. Thus, *Dunn* has been explained by both courts and commentators as a recognition of the jury's historic function, in criminal trials, as a check against arbitrary or oppressive exercises of power by the Executive Branch. See, *e.g., United States v. Maybury,* 274 F.2d 899, 902 (CA2 1960) (Friendly, J.); Bickel, Judge and Jury—Inconsistent Verdicts in the Federal Courts, 63 Harv.L.Rev. 649, 652 (1950). Cf. *Duncan v. Louisiana,* 391 U.S. 145, 155–156, 88 S.Ct. 1444, 1450–1451, 20 L.Ed.2d 491 (1968).

469 U.S. at 64. Both *Powell* and *Dunn* recognize that inconsistent verdicts may in fact benefit a criminal defendant, and accordingly, an inconsistent verdict militates against a review of such convictions. We have followed the analysis in *Powell* and *Dunn* in our state jurisprudence. *State v. Hall,* 174 W.Va. 599, 328 S.E.2d 206 (1985). The circuit court, therefore, did not abuse its discretion in denying petitioner's motion for new trial.

Petitioner next argues, similarly as above, that the circuit court erred in refusing to release A.B.'s medical records for his use in cross-examination. In Syllabus Point 3 of *Nelson v. Ferguson,* 184 W.Va. 198, 399 S.E.2d 909 (1990), we held as follows:

When the mental health records of a prospective witness are sought for the purpose of impeaching the witness' credibility, the circuit court should first examine the records *ex parte* to determine if the request is frivolous. If the court finds probable cause to believe that the mental health records contain material relevant to the credibility issue, counsel should be allowed to examine the records, after which an *in camera* hearing should be held in which the requesting party's counsel designates the parts of the records he believes relevant, and both sides present arguments on the relevancy of those parts.

Petitioner asserts that A.B. was hospitalized due to stress requiring emergency psychiatric care because of the pending trial. He argues that the court should have allowed a psychiatric expert to review the records, rather than reviewing them in camera.

Upon our review of the record, we see no error with respect to the circuit court's handling of A.B.'s medical records. As the State points out, after the State moved for a continuance of the trial due to A.B.'s hospitalization in August 2009, the circuit court ordered the State to provide the court with A.B.'s medical records from A.B.'s hospital visit for an in camera review to determine if there was an issue with A.B.'s competency as a witness. The State complied, and by order entered October 16, 2009, the circuit court ruled that the records did not create any competency issues and denied petitioner's request to review the same. Petitioner presents no information that supports his argument that this ruling was an abuse of discretion.

Petitioner's final assignment of error is that the circuit court erred by allowing improper expert testimony. Petitioner argues that the actual technician who conducted the DNA testing did not testify; rather, it was her supervisor, Ms. Beatty, who supervised the testing and interpreted

the results.[6] However, petitioner failed to preserve this issue for appeal by not objecting to the supervisor testifying at trial. In Syllabus Point 5 of *Tennant v. Marion Health Care Foundation, Inc.,* 194 W.Va. 97, 459 S.E.2d 374 (1995), this Court held:

> " ' " 'Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a . . . [forfeiture] of the right to raise the question thereafter in the trial court or in the appellate court.' Point 6, Syllabus, *Yuncke v. Welker*, 128 W.Va. 299 [36 S.E.2d 410 (1945)]." Syllabus point 7, *State v. Cirullo*, 142 W.Va. 56, 93 S.E.2d 526 (1956).' Syl. Pt. 5, *State v. Davis*, 180 W.Va. 357, 376 S.E.2d 563 (1988)." Syllabus Point 1, *Daniel B. by Richard B. v. Ackerman*, 190 W.Va. 1, 435 S.E.2d 1 (1993).

In fact, at trial, petitioner's counsel took the opposite position to what he argues on appeal. At trial, he objected to the technician testifying, arguing she lacked the education and experience to be considered an expert, and he admitted he had no grounds to object to Ms. Beatty testifying. Thus, we find no abuse of discretion in the circuit court permitting Ms. Beatty's testimony.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 13, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[6] Petitioner also reiterates his argument that the State excessively led the expert witness on direct examination by reading the results and having the witness merely confirm them. Because we have already rejected that argument, we do not address it again.