368 S.E.2d 924

Robin ALLEN

v.

L.C. SMITH, M.D.

No. 17616.

Supreme Court of Appeals of
West Virginia.

April 21, 1988.

Robert A. Taylor, Janet R. Gerwig, Masters & Taylor, Charleston, for Robin Allen.

Cheryl A. Eifert, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, for L.C. Smith.

NEELY, Justice:

In the fall of 1981, Robin Allen was hospitalized for emotional problems at St. Mary's Hospital in Huntington. Dr. L.C. Smith, a psychiatrist, undertook to treat Mrs. Allen, but before discussing her history with Dr. Smith, Mrs. Allen asked whether information revealed during her treatment would be confidential. Dr. Smith assured her that any information she related to him would be kept confidential and that no one would see her records except other medical practitioners and support staff. Relying upon these assurances of confidentiality, Mrs. Allen related information of a sensitive, personal nature that was noted in her medical records.

In November, 1981, Mrs. Allen's husband, Timothy, instituted divorce proceedings and Mr. Allen's attorney, Phillip Duff, served a subpoena *duces tecum* upon Dr. Smith to appear with Mrs. Allen's records at a hearing scheduled for 20 July 1982. The subpoena read as follows:

To:   Larry C. Smith, M.D.
        Highlawn Medical Bldg.—Suite 100
        Huntington, WV  25702
   IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and commanded to *appear* in the Circuit Court Division II of Cabell County, West Virginia, at the Courthouse of the said County in the City of Huntington, on the 20th day of July 1982, at 9:30 AM, then and there *to testify* on the request of the Plaintiff in the above styled action, and also *to bring with you the following described documents* or objects:
   Records pertaining to Examination, Treatment and Prognosis of Robin Jeannette Green Allen. And this you shall not fail to do, under pain of fine and imprisonment as provided by law.
   Given under my hand this 9th day of July 1982.
                RILEY B. STONE
                Clerk of the Circuit Court
                Division II
Phillip C. Duff              By: (Charlene Cline)
Attorney for Plaintiff              Deputy
(emphasis added)

Within twenty-four hours of Dr. Smith's receipt of the subpoena, Dr. Smith called Mr. Duff to ask what he needed to do to comply with the subpoena. Although there is some dispute concerning whether Mr. Duff told Dr. Smith that he was required to provide Mrs. Allen's medical records to be released from the subpoena, it is undisputed that Dr. Smith prepared a letter dated 14 July 1982 addressed to Mr. Duff and sent it along with Mrs. Allen's medical records. These medical records included confidential information that had been provided by Mrs. Allen during her treatment in the fall of 1981. Dr. Smith made no attempt to call Mrs. Allen before releasing her medical records and did not send copies of the information supplied to Mr. Duff to Mrs. Allen.

The hearing scheduled for 20 July 1982 was continued and then reset on three subsequent dates. Before each of these scheduled hearings another subpoena *duces tecum,* similar to the one set forth above, was served on Dr. Smith.

After Mrs. Allen learned that Dr. Smith had been subpoenaed to hearings in her divorce case, Mrs. Allen went to see Dr. Smith. At that point Mrs. Allen complained of Dr. Smith's supplying the medical records to Mr. Duff. At the final divorce hearing held on 4 October 1982, Dr. Smith did not appear in compliance with the subpoena. Although neither Dr. Smith's letter nor the medical records sent to Mr. Duff was introduced into evidence at the hearing, Mr. Duff asked questions of Mrs. Allen during her testimony that were prompted by information he had gleaned from Mrs. Allen's psychiatric records. Mrs. Allen maintains that Mr. Duff's pointed cross-examination, without explanation or placement in time, left the false impression on the trial court that Mrs. Allen was emotionally unstable.

On 17 August 1983, more than one year after Dr. Smith provided Mr. Duff with Mrs. Allen's medical records, Mrs. Allen sued Dr. Smith for invasion of her right of privacy, claiming that the unauthorized release of her records had caused her humiliation and embarrassment. On 13 January 1984 Mrs. Allen amended her original complaint to add three additional causes of action for negligence, breach of implied contract, and breach of express contract. On 11 July 1986 the Circuit Court of Cabell County dismissed all of Mrs. Allen's claims against Dr. Smith upon two grounds. The circuit court held that Mrs. Allen's cause of action for invasion of her right of privacy was barred by our one-year tort statute of limitations, *W.Va.Code,* 55–2–12(c) [1959] and that the counts for negligence, breach

of express contract, and breach of implied contract were not compensable because the only injuries alleged were humiliation and embarrassment. We affirm.

## I

Initially, we should point out that Mrs. Allen has good reason to feel aggrieved. Although there is no ironclad, statutory, doctor-patient privilege in West Virginia, *W. Va. Code*, 27-3-1 [1977] provides that communications and information obtained in the course of treatment or evaluation of mental health patients shall be deemed "confidential information" and should be released only under certain enumerated circumstances. One of these circumstances, contained in subsection (b)(3), is:

> Pursuant to an order of any court based upon a finding that said information is sufficiently relevant to a proceeding before the court to outweigh the importance of maintaining the confidentiality established by this section;

■ Dr. Smith argues here that his release of Mrs. Allen's medical records were pursuant to a valid court order. Nothing, however, could be farther from the truth. A subpoena is issued automatically by a clerk of court upon the *ex parte* application of one party litigant. Although a subpoena is enforceable through the court's power of contempt until it has been quashed by regular, in-court proceedings, a bare subpoena is not the type of binding court order contemplated by *W. Va. Code*, 27-3-1(b)(3) [1977].

We find that Mrs. Allen is justified in her complaint about Dr. Smith's failure to contact her and inform her that he and his records had been subpoenaed. Dr. Smith did not use reasonable diligence to ascertain the name of the lawyer who was representing Mrs. Allen so that he could inform him that a request had been made for Mrs. Allen's medical records. Had he informed Mrs. Allen or her lawyer, of course, a motion could have been made on Mrs. Allen's behalf to quash the subpoena. Then, and only then, would there have been a binding court ruling determining whether the records came within the exception to confidentiality set forth in *W. Va. Code*, 27-3-1(b)(3) [1977].

■ Consequently, we find that sufficient facts were alleged to support submission of this case to a jury on the theory that Dr. Smith was negligent when he released Mrs. Allen's medical records to Mr. Duff without taking reasonable care to insure that only those parts of her medical records that a court had found "relevant" to the divorce proceeding would be made public. We have previously held that there is a private cause of action for violation of the protective provisions of Chapter 27 of the *Code* relating to mental health patients. *Hurley v. Allied Chemical Corp.*, 164 W.Va. 268, 262 S.E.2d 757 (1980). Unfortunately, however, Mrs. Allen's only legitimate cause of action is a tort action that is barred by the statute of limitations.

## II

Mrs. Allen argues that she has a valid action for breach of implied and express contract and that, therefore, the five-year contract statute of limitations should apply. It is true that of late the dividing line between tort and contract actions has become somewhat blurred; however, we find that the Supreme Court of Appeals of Virginia articulated the best general rule distinguishing the two in *Birmingham v. Chesapeake & Ohio Railway Co.*, 93 Va. 548, 37 S.E. 17 (1900) when the court said:

> The limitation is not determined by the form of action, but by its object. If the thing complained of is an injury to the person, the limitation in assumpsit is the same as if the action were in form *ex delicto*. "Whenever the injury is merely personal, whether resulting from breach of contract or from tort, the maxim, 'Actio personalis moritur cum persona' prevails." The object of the suit at bar being to recover damages for personal injuries alleged to have been sustained by the plaintiff, the limitation in tort actions is applicable.

37 S.E. at 17.[1]

Even if we were to concede for a moment that Mrs. Allen could bring her action under a contract theory, she would still be confounded by the fact that she alleges no damages other than embarrassment and humiliation. Except in extraordinary circumstances, such as a breach of a promise to marry, compensatory damages for emotional distress without an accompanying physical or economic loss cannot be awarded in a contract action. *Flint v. Gilpin*, 29 W.Va. 740, 3 S.E. 33 (1887).[2]

This general rule about *contract* damages follows logically from the fact that negligently or intentionally induced emotional distress has a remedy through our tort law. Thus, in *Harless v. First Nat. Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982) this Court said:

... The right of a plaintiff to recover compensatory damages for emotional distress arising from the wrongful acts of another has been recognized in *Monteleone v. Co–Operative Transit Co.*, 128 W.Va. 340, 347, 36 S.E.2d 475, 478 (1945), where we set out three categories of recovery:

"First, those mental disturbances that accompany or follow an actual physical injury caused by impact upon the occurrence of the tort; second, where there is no impact and no physical injury at the time, but a physical injury afterwards results as the causal effect of a nervous shock which in turn was the proximate result of the defendant's wrong; and third, where there was no impact and no physical injury caused by the defendant's wrong, but an emotional or mental disturbance is shown to have been the result of the defendant's intentional or wanton wrongful act. In any of the foregoing classifications we believe that the plain weight of authority sustains a recovery."

As noted in *Monteleone*, the right to recover emotional distress in the absence of some physical injury or a subsequently developed physical injury is ordinarily predicated on some intentional wrong of the defendant. We have cases where emotional distress recovery has been permitted where the underlying cause of action involved an intentional tort. *E.g., Sprouse v. Clay Communications*, [158] W.Va. [427], 211 S.E.2d 674 (1975) (libel action); *Addair v. Huffman*, 156 W.Va. 592, 195 S.E.2d 739 (1973) (wrongful suggestee execution); *Sutherland v. Kroger Company*, 144 W.Va. 673, 110 S.E.2d 716 (1959) (illegal search); *Toler v. Cassinelli*, 129 W.Va. 591, 41 S.E.2d 672 (1946) (wrongful ejection); *Nees v. Julian Goldman Stores, Inc.*, 109 W.Va. 329, 154 S.E. 769 (1930) (assault); *Lambert v. Brewster*, 97 W.Va. 124, 125 S.E. 244 (1924) (assault); *Jones v. Hebdo*, 88 W.Va. 386, 106 S.E. 898 (1921) (false imprisonment).

Conceptually, it is difficult to draw a precise line that will serve to accurately define those torts which are deemed "intentional" and, therefore, permit a recovery for emotional distress in the absence of any physical injury. The clearest categories are those of the traditional non-physical torts such as false imprisonment, libel and slander, malicious prosecution and wrongful attachment or debt collecting processes. Prosser, Torts § 12 (1972 ed.); Annot., 87 A.L.R.3d 201 (1978); Annot., 64 A.L.R.2d 100 (1959). In these situations, the severity of the underlying act is utilized to support the

---

1. *Accord McClure v. Johnson*, 50 Ariz. 76, 69 P.2d 573 (1937); *Kozan v. Comstock*, 270 F.2d 839 (5th Cir.La.1959); *Oklahoma Natural Gas Co. v. Pack*, 186 Okla. 330, 97 P.2d 768 (1939); *Wilder v. Haworth*, 187 Or. 688, 213 P.2d 797 (1950); *Howard v. Middlesborough Hospital*, 242 Ky. 602, 47 S.W.2d 77 (1932); *Mullane v. Crump*, 272 App.Div. 922, 71 N.Y.S.2d 40 *appeal denied*, 272 App.Div. 934, 72 N.Y.S.2d 417 (1947); *Hansen v. Stoll*, 130 Ariz. 454, 636 P.2d 1236 (Ariz.App.1981); *MacDonald v. Clinger*, 84 App.Div.2d 482, 446 N.Y.S.2d 801 (1982); *Schaf-fer v. Spicer*, 88 S.D. 36, 215 N.W.2d 134 (1974); *Watts v. Cumberland County Hospital System, Inc.*, 75 N.C.App. 1, 330 S.E.2d 242, *review denied*, 314 N.C. 548, 335 S.E.2d 27 (1985); *Schwartz v. Thiele*, 242 Cal.App.2d 799, 51 Cal. Rptr. 767 (1966).

2. *Eckenrode v. Life of America Insurance Co.*, 470 F.2d 1 (7th Cir.1972); *Meyer v. Nottger*, 241 N.W.2d 911 (Iowa 1976); *Carrigan v. Henderson*, 192 Okl. 254, 135 P.2d 330 (1943).

reasonableness of the claim for emotional distress.

169 W.Va. at 689, 289 S.E.2d at 701. As *Harless* points out, courts have had a hard time determining when it is appropriate to award damages for emotional distress alone, but to the extent that guidelines have been established in the area at all, they have been established in tort and not in contract.

Mrs. Allen argues that there was both an express and implied contract to keep her medical information confidential. Other states have found a contract right to confidentiality based on the Hippocratic Oath and the American Medical Association's *Principles of Medical Ethics. See Horne v. Patton,* 291 Ala. 701, 287 So.2d 824 (1973); *Vassiliades v. Garfinckel's, Brooks Bros.,* 492 A.2d 580 (Dist.Ct.App.1985); *Hannaway v. Cole,* 2 Mass.App. 847, 311 N.E.2d 924 (1974); *Stempler v. Speidell,* 100 N.J. 368, 495 A.2d 857 (1985); *MacDonald v. Clinger,* 84 A.D.2d 482, 446 N.Y.2d 801 (1982); *Alexander v. Knight,* 197 Pa.Super 79, 177 A.2d 142 (1962); 48 A.L.R. 4th 668.

However, because of the likelihood of vexatious litigation in a profession that already has more than its fair share of lawsuits, we are reluctant to recognize a general cause of action for the unauthorized disclosure of medical records in the absence of conduct so outrageous as to shock the conscience. In any event, however, any cause of action for unauthorized release of a patient's medical records would be a tort cause of action governed by the one-year statute of limitations of *W.Va. Code,* 55–2–12(c) [1959] even though the duty violated arose from a contract.

Therefore, for the reasons set forth above, the judgment of the Circuit Court of Cabell County is affirmed.

Affirmed.