IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2018 Term

**FILED**
**May 31, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No.  17-0643

JILL C. BARBER,
Plaintiff Below, Petitioner

v.

CAMDEN CLARK MEMORIAL HOSPITAL CORP.,
Defendant Below, Respondent

Appeal from the Circuit Court of Wood County
Honorable Jason A. Wharton, Judge
Civil Action No. 17-C-23

REVERSED AND REMANDED

Submitted: May 15, 2018
Filed: May 31, 2018

James D. McQueen, Jr., Esq.                    Thomas J. Hurney, Jr., Esq.
McQueen Davis, PLLC                            Laurie K. Miller, Esq.
Huntington, West Virginia                      Jackson Kelly PLLC
and                                            Charleston, West Virginia
Christopher J. Heavens, Esq.                   Attorneys for Respondent
Heavens Law Firm, PLLC
Charleston, West Virginia
Attorneys for Petitioner

JUSTICE LOUGHRY delivered the Opinion of the Court.
JUSTICE WALKER, deeming herself disqualified, did not participate in the case.
JUDGE KAUFMAN, sitting by temporary assignment.

CHIEF JUSTICE WORKMAN dissents and reserve the right to file a dissenting opinion.
JUDGE KAUFMAN concurs and reserves the right to file a concurring opinion.

SYLLABUS BY THE COURT

1.      "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995).

2.      "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't. of WV*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

3.      "W.Va. Code, 27-3-1(a), provides for confidentiality of communications and information obtained in the course of treatment and evaluation of persons who may have mental or emotional conditions or disorders, subject to the exceptions set out in W.Va. Code, 27-3-1(b)." Syl. Pt. 1, *State v. Simmons*, 172 W.Va. 590, 309 S.E.2d 89 (1983).

4.      "There is a private tort cause of action for a violation of *W.Va. Code*, 27-3-1 [1977]." Syl. Pt. 1, *Allen v. Smith*, 179 W.Va. 360, 368 S.E.2d 924 (1988).

5. "Any time a subpoena duces tecum is issued to require the production of hospital records as defined in W. Va. Code § 57-5-4a(a) (1981) (Repl.Vol.1997), whether such records are sought in connection with a hearing, deposition, trial or other proceeding, or are merely sought for inspection and copying, the requirements of W. Va. Code §§ 57-5-4a–4j apply and must be followed." Syl. Pt. 3, *Keplinger v. Virginia Elec. & Power Co.*, 208 W.Va. 11, 537 S.E.2d 632 (2000).

6. "The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953).

7. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959).

8. "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

9. "[W]here two statutes are in apparent conflict, the Court must, if reasonably possible, construe such statutes so as to give effect to each." Syl. Pt. 4, in part, *State ex rel. Graney v. Sims*, 144 W.Va 72, 105 S.E.2d 886 (1958).

10. "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syl. Pt.1, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984).

11. "A subpoena is issued automatically by a clerk of court upon the *ex parte* application of one party litigant, and although a subpoena is enforceable through the court's power of contempt until it has been quashed by regular, in-court proceedings, a bare subpoena is not the type of binding court order contemplated by *W.Va. Code*, 27-3-1(b)(3) [1977]." Syl. Pt. 3, *Allen v. Smith*, 179 W.Va. 360, 368 S.E.2d 924 (1988).

12. "It is always presumed that the legislature will not enact a meaningless or useless statute." Syl. Pt. 4, *State ex rel. Hardesty v. Aracoma*, 147 W.Va. 645, 129 S.E.2d 921 (1963).

13    "A statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. Pt. 1, *Consumer Advocate Div.v. Public Serv. Comm'n*, 182 W.Va. 152, 386 S.E.2d 650 (1989).

14.    "Confidential information," as defined by West Virginia Code § 27-3-1(a) (2008), is not subject to disclosure under the Medical Records Act, West Virginia Code §§ 57-5-4a through -4j (1981), unless one of the exceptions set forth in West Virginia Code § 27-3-1(b) applies or the patient has authorized the disclosure as provided in West Virginia Code § 27-3-2 (2007).

15.    "Common-law tort claims based upon the wrongful disclosure of medical or personal health information are not preempted by the Health Insurance Portability and Accountability Act of 1996."  Syl. Pt. 3, *R.K. v. St. Mary's Med. Ctr.*, *Inc.*, 229 W.Va. 712, 735 S.E.2d 715 (2012).

16.    A hospital's compliance with the Medical Records Act, West Virginia Code §§ 57-5-4a through -4j (1981), and the Health Insurance Portability and Accountability Act of 1996 when responding to a subpoena for a patient's records does not preclude an action based on the wrongful disclosure of confidential information in violation of West Virginia Code § 27-3-1 (2008).

LOUGHRY, Justice:

The petitioner and plaintiff below, Jill C. Barber, appeals the June 12, 2017, order of the Circuit Court of Wood County dismissing the complaint she filed against the respondent and defendant below, Camden Clark Memorial Hospital Corp. ("Camden Clark"), alleging that it wrongfully disclosed her confidential mental health treatment records in a federal court proceeding. Having considered the parties' arguments, the submitted appendix record, and pertinent authorities, we find the circuit court erred by dismissing the complaint. Accordingly, we reverse the circuit court's order and remand this case for further proceedings consistent with this opinion.

## I. Factual and Procedural Background

In 2014, Ms. Barber brought an action in the United States District Court for the Southern District of West Virginia against Sedwick Claims Management Services alleging fraud in connection with the handling of a worker's compensation claim.[1] In January 2016, during the federal proceeding, Sedwick, through its counsel, Frith Anderson & Peak, served a subpoena duces tecum on Camden Clark requesting all of Ms. Barber's medical records. Specifically, the subpoena sought production of:

---

[1]Ms. Barber's worker's compensation claim concerned an injury she sustained while employed by Family Dollar.

1

> **All Medical Records** of Jill C. Barber . . . generated by any and all health care providers which are in your possession; inclusive of correspondence, referrals, hospital admission sheets, patient intake and information sheets, progress notes, medical reports, discharge summaries, E.R. records, medical test results and data, medical opinions, physical therapy records, rehabilitation records, lab tests, radiology and x-ray reports (and/or films if specified)[.]

Ms. Barber received notice of the subpoena but did not file a motion to quash nor object in any way.

On February 8, 2016, Camden Clark responded to the subpoena by producing more than one thousand pages of documents including hospital records reflecting that Ms. Barber had received in-patient mental health treatment when she was a teenager.[2] Frith, Anderson & Peak provided copies of the medical records produced by Camden Clark to Ms. Barber's counsel on February 26, 2016. Ms. Barber's counsel did not review the documents, and Ms. Barber never informed her counsel of her mental health treatment as a teenager.

On March 7, 2016, Ms. Barber was deposed in the federal court case. During her deposition, Ms. Barber was asked whether she had ever received any psychiatric or mental health treatment in her lifetime. When she replied "no," she was confronted with her

---

[2]According to the complaint, Ms. Barber received mental health treatment at St. Joseph's Hospital, which was purchased by West Virginia United Health System in 2011 and merged with Camden Clark to create a regional medical center.

mental health records that had been produced by Camden Clark. Thereafter, Ms. Barber filed

this action in the Circuit Court of Wood County.

In her January 23, 2017, complaint, Ms. Barber alleged that Camden Clark

breached its "statutory and common law duty to restrict access to [her] mental health medical

records, including those defined as 'confidential information' under [West Virginia Code]

§ 27-3-1 (2008)."[3]   Ms. Barber asserted that Camden Clark had disclosed her confidential

[3]Located in Chapter 27, which addresses "Mentally Ill Persons," West Virginia Code § 27-3-1 is titled "Definition of confidential information; disclosure." When Ms. Barber filed her complaint, the statute provided in its entirety, as follows:

> (a) Communications and information obtained in the course of treatment or evaluation of any client or patient are confidential information. Such confidential information includes the fact that a person is or has been a client or patient, information transmitted by a patient or client or family thereof for purposes relating to diagnosis or treatment, information transmitted by persons participating in the accomplishment of the objectives of diagnosis or treatment, all diagnoses or opinions formed regarding a client's or patient's physical, mental or emotional condition, any advice, instructions or prescriptions issued in the course of diagnosis or treatment, and any record or characterization of the matters hereinbefore described. It does not include information which does not identify a client or patient, information from which a person acquainted with a client or patient would not recognize such client or patient and uncoded information from which there is no possible means to identify a client or patient.
>
> (b) Confidential information shall not be disclosed, except:

3

(1) In a proceeding under section four [§ 27-5-4], article five of this chapter to disclose the results of an involuntary examination made pursuant to section two [§ 27-5-2], three [§ 27-5-3] or four [§ 27-5-4] of said article;

(2) In a proceeding under article six-a [§§ 27-6A-1 et seq.] of this chapter to disclose the results of an involuntary examination made pursuant thereto;

(3) Pursuant to an order of any court based upon a finding that the information is sufficiently relevant to a proceeding before the court to outweigh the importance of maintaining the confidentiality established by this section;

(4) To provide notice to the federal National Instant Criminal Background Check System, established pursuant to section 103(d) of the Brady Handgun Violence Prevention Act, 18 U. S. C.§ 922, in accordance with article seven-a [§§ 61A-7A-1 et seq.], chapter sixty-one of this code;

(5) To protect against a clear and substantial danger of imminent injury by a patient or client to himself, herself or another;

(6) For treatment or internal review purposes, to staff of the mental health facility where the patient is being cared for or to other health professionals involved in treatment of the patient; and

(7) Without the patient's consent as provided for under the Privacy Rule of the federal Health Insurance Portability and Accountability Act of 1996, 45 C. F. R. § 164.506, for thirty days from the date of admission to a mental health facility if: (i) The provider makes a good faith effort to obtain consent from the patient or legal representative prior to disclosure; (ii) the minimum information necessary is released for a specifically stated purpose; and (iii) prompt notice of the disclosure, the recipient of the information and the purpose of the disclosure is given to the patient or legal representative.

information without her consent and without a court order as provided in West Virginia Code § 27-3-1(b)(3). Ms. Barber also asserted a claim for intentional infliction of emotional distress. Ms. Barber alleged she "was in denial about her prior psychiatric treatment and did not inform anyone, including her attorney, that she had been treated for mental health as an adolescent" and "[u]pon being confronted with this confidential material . . . [she] suffered extreme emotional distress, humiliation and embarrassment."

In response to the complaint, Camden Clark filed a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.[4] Camden Clark asserted that it had fully complied with the Medical Records Act, West Virginia Code § 57-5-4a to -4j (1981) (hereinafter the "Act"),[5] and 45 C.F.R. § 164.512 (2016), the corresponding federal regulation under the Health Insurance Portability and Accountability Act of 1996 (hereinafter "HIPAA regulation"),[6] which govern a non-party hospital's response to a subpoena for

W.Va. Code 27-3-1 (2008). The statute was subsequently amended in 2017 and 2018. We discuss the 2018 amendment in note 10, *infra*.

[4]Rule 12(b)(6) of the West Virginia Rules of Civil Procedure provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."

[5]The relevant portions of the Act are set forth in the discussion section, *infra*.

[6]45 C.F.R. §164.512 provides, in pertinent part:

> (e) *Standard: Disclosures for judicial and administrative proceedings.* (1) *Permitted disclosures.* A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

. . . .

(ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

(A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

(iii) For the purposes of paragraph (e)(1)(ii)(A) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

(A) The party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual's location is unknown, to mail a notice to the individual's last known address);

(B) The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court or administrative tribunal; and

(C) The time for the individual to raise objections to the court or administrative tribunal has elapsed, and:

(1) No objections were filed; . . .

. . . .

(iv) For the purposes of paragraph (e)(1)(ii)(B) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information, if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

(A) The parties to the dispute giving rise to the request

medical records.  Camden Clark argued that Ms. Barber's failure to plead a violation of the

Act and the HIPAA regulation required dismissal of her complaint.  Following a hearing on

the matter, the circuit court entered an order on June 12, 2017, dismissing Ms. Barber's

statutory and common law claims.  The circuit court found that "a patient cannot rely on the

protections of West Virginia Code § 27-3-1 to bring an action against a hospital that properly

complied with West Virginia and/or HIPAA regulations in responding to a subpoena for the

patient's medical records where the patient never raised an objection to the subpoena[.]"

Upon dismissal of her complaint, Ms. Barber filed this appeal.

for information have agreed to a qualified protective order and have presented it to the court or administrative tribunal with jurisdiction over the dispute; or

(B) The party seeking the protected health information has requested a qualified protective order from such court or administrative tribunal.

(v) For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administve proceeding that:

(A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and

(B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

## II. Standard of Review

Our standard for reviewing a circuit court's dismissal of a complaint is well established:  "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc*., 194 W.Va. 770, 461 S.E.2d 516 (1995).  As discussed above, the circuit court dismissed Ms. Barber's complaint based on its finding that Camden Clark had complied with certain statutory and regulatory provisions. When reviewing a legal question involving statutory interpretation, we also employ the de novo standard.  As set forth in syllabus point one of *Appalachian Power Company  v. State Tax Department of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995):  "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."  Under this plenary standard, we consider the parties' arguments.

## III.  Discussion

Ms. Barber contends that the circuit court erred by finding that her mental health records were properly disclosed by Camden Clark pursuant to the Act and the corresponding HIPAA regulation.  She argues that her mental health records were not subject to disclosure absent her written consent or a court order as provided in West Virginia Code § 27-3-1(b)(3), the exception that would have allowed disclosure of her confidential mental health records during the federal proceeding.  Ms. Barber further disputes the circuit court's

8

finding that by failing to object to the subpoena, she authorized the disclosure of her confidential mental health records. Finally, she maintains that neither the Act, nor the HIPAA regulation, precludes an action against a hospital that discloses mental health records in violation of West Virginia Code § 27-3-1.

We have previously recognized that "W.Va. Code, 27-3-1(a), provides for confidentiality of communications and information obtained in the course of treatment and evaluation of persons who may have mental or emotional conditions or disorders, subject to the exceptions set out in W.Va.Code, 27-3-1(b)." Syl. Pt. 1, *State v. Simmons*, 172 W.Va. 590, 309 S.E.2d 89 (1983). We have also observed that "[t]his [statute's] location in Chapter 27 relating to mentally ill persons . . . suggest[s] that the legislature intended this confidentiality with regard to communication and information to be maintained between mental health professionals and their clients." *Id.* at 597, 309 S.E.2d at 96. Accordingly, we have held that "there is a private tort cause of action for a violation of *W.Va.Code*, 27-3-1 [1977]." Syl. Pt. 1, *Allen v. Smith*, 179 W.Va. 360, 368 S.E.2d 924 (1988).

West Virginia Code §§ 57-5-4b through -4j provides the procedure that hospitals must follow to disclose medical records in response to a subpoena. With regard to the Act, we have stated that

> [a]ny time a subpoena duces tecum is issued to require
> the production of hospital records as defined in W.Va. Code §

9

57-5-4a(a) (1981) (Repl.Vol.1997), whether such records are sought in connection with a hearing, deposition, trial or other proceeding, or are merely sought for inspection and copying, the requirements of W.Va. Code §§ 57-5-4a–4j apply and must be followed.

Syl. Pt. 3, *Keplinger v. Virginia Elec. & Power Co.*, 208 W.Va. 11, 537 S.E.2d 632 (2000).

Under West Virginia Code § 57-5-4a(a) (1981),

"[r]ecords" means and includes *without restriction*, those medical histories, records, reports, summaries, diagnoses, and prognoses, records of treatment and medication ordered and given, notes, entries, X-rays, and other written or graphic data prepared, kept, made or maintained in hospitals that pertain to hospital confinements or hospital services rendered to patients admitted to hospitals or receiving emergency room or outpatient care. Such records shall not, however, include ordinary business records pertaining to patients' accounts or the administration of the institution.

(Emphasis added). In this case, there is no dispute that Camden Clark complied with the statutory procedure for production of its records. The issue is whether Ms. Barber has a claim against Camden Clark because it included documentation of her mental health treatment in the records it produced although no court order or written consent authorized the disclosure.

Relying upon the "without restriction" language in West Virginia Code § 57-5-4a(a) and the fact that the subpoena requested "all medical records" of Ms. Barber, Camden Clark reasons that it was required to disclose her mental health records. Because it complied with the Act and corresponding HIPAA regulation and because Ms. Barber never objected

10

to the subpoena, Camden Clark argues that she has no cause of action for wrongful disclosure of her mental health records. In other words, Camden Clark contends that under these facts and circumstances, West Virginia Code § 27-3-1 simply does not apply.

In considering the meaning of statutory provisions, we are guided by our rules of statutory construction. It is well established that "[t]he primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953). To that end, "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959); *see also* Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

Given the inclusion of the words "without restriction" in West Virginia Code § 57-5-4a(a), documentation of mental health treatment clearly falls within the definition of "records," which are subject to disclosure pursuant to a subpoena under the Act. However, those mental health records are also clearly deemed "confidential information" and not

11

subject to disclosure under West Virginia Code § 27-3-1(a) unless one of the exceptions set forth in West Virginia § 27-3-1(b)[7] applies or the patient gives written consent as provided in West Virginia Code § 27-3-2 (2007).[8] Thus, while the Act provides for the production of mental health treatment records pursuant to a subpoena, West Virginia Code § 27-3-1 does not permit disclosure of those records unless one of its exceptions applies or the patient provides written consent.

Generally, "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Even "where two statutes are in apparent conflict, the Court must, if reasonably possible, construe such statutes so as to give effect to each." Syl. Pt. 4, in part, *State ex rel. Graney v. Sims*, 144 W.Va 72, 105 S.E.2d 886 (1958). However, when it is not

_____

[7]*See* note 3, *supra*.

[8]West Virginia Code § 27-3-2 provides:

> No consent or authorization for the transmission or disclosure of confidential information is effective unless it is in writing and signed by the patient or client by his or her legal guardian. Every person signing an authorization shall be given a copy.

> Every person requesting the authorization shall inform the patient, client or authorized representative that refusal to give the authorization will in no way jeopardize his or her right to obtain present or future treatment.

reasonably possible to give effect to both statutes, the more specific statute will prevail. As we held in syllabus point one of *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984), "[t]he general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." *See also Int'l Union of Operating Eng'rs v. L.A. Pipeline Constr. Co., Inc.*, 237 W.Va. 261, 267, 786 S.E.2d 620, 626 (2016) ("[W]here two statutes apply to the same subject matter, the more specific statute prevails over the general statute."); *Newark Ins. Co. v. Brown*, 218 W.Va. 346, 351, 624 S.E.2d 783, 788 (2005) ("When faced with a choice between two statutes, one of which is couched in general terms and the other of which specifically speaks to the matter at hand, preference is generally accorded to the specific statute."). In this instance, West Virginia Code § 27-3-1 specifically addresses the subject matter at issue here–mental health records. In contrast, West Virginia Code § 57-5-4a is a general statute defining hospital records subject to disclosure pursuant to a subpoena.

Arguing that the statutes do not conflict, Camden Clark maintains that West Virginia § 27-3-1 does not apply when hospitals are served with subpoenas because they are required under the Act to produce the records. However, the legislatively-declared exceptions for disclosure set forth in West Virginia Code § 27-3-1(b) do not include a request for records pursuant to a subpoena. Indeed, we have previously declared that although

> [a] subpoena is issued automatically by a clerk of court
> upon the *ex parte* application of one party litigant, and although

13

a subpoena is enforceable through the court's power of contempt until it has been quashed by regular, in-court proceedings, a bare subpoena is not the type of binding court order contemplated by *W.Va.Code*, 27-3-1(b)(3) [1977].

*Smith*, 179 W.Va. at 360, 368 S.E.2d at 924, syl. pt. 3.

To adopt Camden Clark's position would render West Virginia Code § 27-3-1 meaningless. Our rules of statutory construction do not permit us to disregard a statute without legislative direction to do so. To the contrary, "it is always presumed that the legislature will not enact a meaningless or useless statute." Syl. Pt. 4, *State ex rel. Hardesty v. Aracoma*, 147 W.Va. 645, 129 S.E.2d 921 (1963). Likewise, our rules of statutory construction do not permit us to read into West Virginia Code § 27-3-1 an exception allowing disclosure of mental health records pursuant to a subpoena. "It is not for this Court to arbitrarily read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Banker v. Banker*, 196 W.Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996) (citing *Bullman v. D & R Lumber Co.*, 195 W.Va. 129, 464 S.E.2d 771 (1995). Moreover, "[a] statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. Pt. 1, *Consumer Advocate Div. v. Public Serv. Comm'n*, 182 W.Va. 152, 386 S.E.2d 650 (1989).

14

For the same reasons, we reject Camden Clark's contention that Ms. Barber authorized the disclosure of her mental health records by not objecting to the subpoena. West Virginia Code § 27-3-2 mandates that authorization for disclosure of mental health records be in writing and signed by the patient.[9] A failure to object to a subpoena does not satisfy the written consent requirement of West Virginia Code § 27-3-2 to permit disclosure of mental health records under the Act.

There is simply no basis to conclude that a patient's "confidential information," as defined by West Virginia Code § 27-3-1, may be disclosed pursuant to a subpoena under the Act even when the patient does not object. Without question, hospitals must respond to subpoenas served pursuant to the Act, and our holding in syllabus point three of *Keplinger* remains the rule with respect to the procedure hospitals must follow in producing the records of their patients. However, given the clear legislative intent to provide greater protection for mental health records than that afforded other medical treatment records and the absence of any statutory exception permitting the disclosure of those records in response to a subpoena, a hospital may not disclose mental health records, which are subject to the confidentiality provisions of West Virginia Code § 27-3-1(a), under the Act without the patient's consent. Accordingly, we now hold that "confidential information," as defined by West Virginia Code § 27-3-1(a), is not subject to disclosure under the Act unless

_____

[9]*See* note 8, *supra*.

15

one of the exceptions set forth in West Virginia Code § 27-3-1(b) applies or the patient has authorized the disclosure as provided in West Virginia Code § 27-3-2.[10]

Having determined that hospitals responding to subpoenas pursuant to the Act must comply with West Virginia Code § 27-3-1, we find that the circuit court erred by dismissing Ms. Barber's complaint. As noted above, we have previously recognized a cause of action for a violation of West Virginia Code § 27-3-1. We have also expressly held that "common-law tort claims based upon the wrongful disclosure of medical or personal health information are not preempted by the Health Insurance Portability and Accountability Act of 1996." Syl. Pt. 3, *R.K. v. St. Mary's Med. Ctr., Inc.*, 229 W.Va. 712, 735 S.E.2d 715 (2012).

---

[10]As set forth in note 3, *supra*, West Virginia Code § 27-3-1 was amended in 2018. The amended statute, which becomes effective ninety days from the passage date of March 8, 2018, includes additional exceptions for disclosure of confidential information under West Virginia Code § 27-3-1(b). Of particular significance to future, similar circumstances is the provision that will permit disclosure

> [p]ursuant to and as provided for under the federal privacy rule of the Health Insurance Portability and Accountability Act of 1996 in 45 CFR § 164, as amended under the Health Information Technology for Economic and Clinical Health Act of the American and the Omnibus Final Rule, 78 FR 5566[.]

W.Va. Code § 27-3-1(b)(6) (2018). Notably, 45 C.F.R. § 164.512 permits disclosure for judicial and administrative proceedings in response to a subpoena. *See* note 6, *supra*.

In *R.K.*, the plaintiff brought suit against the hospital for disclosing his psychiatric records without his authorization to his estranged wife during their divorce proceedings. He asserted several common law tort claims based upon the alleged wrongful disclosure of his confidential information. Relying upon the reasoning in *Yath v. Fairview Clinic N.P.*, 767 N.W.2d 34 (Minn. Ct. App. 2009), we rejected the hospital's assertion that the plaintiff's action was preempted by HIPAA. *R.K.*, 229 W.Va. at 718-19, 735 S.E.2d at 721-22. *Yath,* like the case at bar, involved an alleged violation of a codified state law prohibiting the disclosure of certain medical information. As the Minnesota court explained,

> The general statutory rule is that HIPAA supersedes or preempts any "contrary" provision of state law. 42 U.S.C. § 1320d-7(a)(1). [Defendant clinic] Fairview argued, and the district court agreed, that Minnesota Statutes section 144.335 is "contrary" to HIPAA because section 144.335 provides for a private cause of action for the wrongful disclosure of an individual's medical records while HIPAA does not. But just because a distinction exists does not make the Minnesota provision "contrary" to HIPAA.
>
> . . . .
>
> . . . . HIPAA requires entities that maintain or transmit health care information to establish safeguards "to ensure the integrity and confidentiality" of an individual's health care information and "to protect against any reasonably anticipated . . . unauthorized uses or disclosures of the information." 42 U.S.C. § 1320d-2(d)(2). If a person wrongfully discloses health care information, that person may be subject to criminal penalties, including fines or imprisonment. 42 U.S.C. § 1320d-6. Rather than creating an "obstacle" to HIPAA, Minnesota Statutes section 144.335 supports at least one of HIPAA's goals by establishing another disincentive to wrongfully disclose a patient's health care record. We hold that Minnesota Statutes

17

section 144.335 is not a contrary state law preempted by HIPAA.

*R.K.*, 229 W.Va. at 718-19, 735 S.E.2d at 721-22 (quoting *Yath*, 767 N.W.2d at 49-50); *see also WV Dep't of Health & Human Res. v. E.H.*, 236 W.Va. 279, 290, 778 S.E.2.d 728, 739 (2015) ("Because the HIPAA Privacy Rule is viewed as a floor of privacy protections for individuals, state laws may provide greater or more stringent protections. In those instances where state law is determined to be more stringent because it imposes enhanced or more detailed protections, the state law is not preempted by HIPAA."). Thus, "HIPAA does not preempt state-law causes of action for the wrongful disclosure of health care information." *R.K.*, 229 W.Va. at 718, 735 S.E.2d at 721. Accordingly, we now hold that a hospital's compliance with the Act and HIPAA when responding to a subpoena for a patient's records does not preclude an action based on the wrongful disclosure of confidential information in violation of West Virginia Code § 27-3-1.

## IV. Conclusion

Based on the foregoing, we find that the circuit court erred by dismissing Ms. Barber's complaint.[11] Therefore, the final order of the Circuit Court of Wood County entered

---

[11]Ms. Barber also asserted that the circuit court erred by making a factual finding in its dismissal order that she was "dishonest" with her counsel by not disclosing her prior mental health treatment. In considering a motion to dismiss, the "[c]omplaint[] [is] to be read liberally as required by the notice pleading theory underlying the West Virginia Rules of Civil Procedure . . . . The circuit court, [must] view[] all the facts in a light most favorable

18

on June 12, 2017, is reversed, and this case is remanded for further proceedings consistent with this opinion.[12]

Reversed and remanded.

---

to the nonmoving party[.]" *McGraw*, 194 W.Va. at 776, 461 S.E.2d 522. As noted above, the complaint alleged that Ms. Barber "was in denial about her prior psychiatric treatment and did not inform anyone, including her attorney, that she had been treated for mental health as an adolescent." Ms. Barber argues that "being in denial" does not equate to "dishonesty" and that this factual issue is for the jury to determine, not the circuit court. Although the factual finding that Ms. Barber was dishonest is not supported by a liberal reading of the complaint, we need not address this matter further in light of our decision to reverse the circuit court's order for the reasons set forth above.

[12]As noted, the claimant also set forth a claim for intentional infliction of emotional distress. Because the circuit court's dismissal of that claim was based solely upon its interpretation of the Act and HIPAA regulation, we do not otherwise address the validity of that claim.

19