**FILED**

**November 3, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Linda Birchfield-Modad,**
**Petitioner Below, Petitioner**

**vs.)  No. 20-0747** (Kanawha County 19-AA-24)

**West Virginia Consolidated Public Retirement Board,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Linda Birchfield-Modad appeals the September 1, 2020, order of the Circuit Court of Kanawha County which affirmed Respondent West Virginia Consolidated Public Retirement Board's ("Board") decision reducing her retirement service credit years in the Teachers Retirement System ("TRS").[1]  The Board filed a brief in support of the circuit court's order.

Upon consideration of the standard of review, the briefs, the appendix record, and oral argument, the Court finds the circuit court clearly erred in affirming the Board's decision. Accordingly, this case satisfies the "limited circumstance" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for reversal and remand by memorandum decision.

### I.  Factual and Procedural History

The Board is the statutorily designated administrator of nine separate and distinct West Virginia public pension plans, including the TRS. W. Va. Code § 5-10D-1.  It is undisputed that Petitioner and her employer, the West Virginia College of Graduate Studies ("COGS"),[2] made contributions to TRS from 1982 until the time of her retirement.

In June 1981, Petitioner was hired as a secretary for COGS and was stationed on the campus of Concord University.  At the time, she was classified as a permanent part-time employee, working twenty-four hours per week, Monday through Thursday.[3]  In September 1981, COGS

---

[1] Petitioner is represented by Lonnie C. Simmons, Esq.  The Board is represented by J. Jeaneen Legato, Esq.

[2] We note that originally COGS was under the control of the West Virginia Board of Regents, but such control was transferred to Marshall University in 1996.

[3] Petitioner testified before the Board's hearing officer that, among her job duties, she:

informed Petitioner that she was entitled to participate in TRS as part of her employment, and then subsequently enrolled her in the retirement system.[4]  In December 1992, Petitioner was promoted to a full-time position, but her job duties remained the same.

Throughout the 1980s and early 1990s, Petitioner was apparently classified as a "Secretary II," though at least one internal employment document from 1991 also refers to her as an "Admin. Sec.", presumably referring to "administrative secretary."  Also of note, in 1992, the University System of West Virginia noticed its employees of its plans to alter the classification system from Secretary I to IV to a new hierarchy including Office Assistant, Secretary, Administrative Secretary, Executive Secretary, and Staff Associate.  Ultimately, in July 1994, Petitioner was reclassified as an Administrative Secretary.

Petitioner first sought to retire in January 2017, after thirty-six years of public employment.  After submitting an inquiry to the Board to determine whether she was eligible for retirement, the Board responded that there "had been an error in the years of service credit report by her employer" surrounding the 1982 to 1993 period.  Specifically, the Board found that Petitioner was not eligible to participate in TRS during that time period because she was a part-time, nonteaching employee.  Under the law in effect at the time, only full-time nonteaching members or part-time teaching members were eligible to participate in TRS.[5]  The Board informed her that it was correcting said error by reducing her years of service for the 1982 to 1993 period from 9.264 years to 0.636 years.

Petitioner requested an administrative appeal of the Board's decision.  After a hearing before the Board's hearing officer, her appeal was denied on November 27, 2017.  The hearing officer reasoned that Petitioner was ineligible to participate in TRS during the years in question insofar as she was a part-time nonteaching member of the public school system.  Petitioner appealed that decision to the circuit court, and the matter was subsequently remanded for consideration of additional evidence — namely evidence pertaining to Petitioner's work duties.  After considering that evidence, the Board denied Petitioner's appeal on March 12, 2019, setting forth the same reasoning that Petitioner was ineligible to participate in TRS as a part-time nonteaching member of the public schools.  Petitioner once again appealed to the circuit court, and the court affirmed the Board's decision by order dated September 1, 2020.  This appeal followed.

## II.  Standard of Review

registered students, proctored examinations, coded and scored exams, assisted a professor in a study referred to as Project Challenge, went around to promote COGS, answer[ed] the telephone, sold books, made drawings for special education classes, set up equipment for the professors, typed for the professors, performed clerical work, and reserved classrooms for professors.

[4] The parties agree that neither the Board nor any of its staff communicated to COGS or Petitioner that she was eligible to participate in TRS at that time.

[5] As discussed *infra*, the Legislature amended West Virginia Code § 18-7A-3 in 1986 to require teaching members to also be full-time employees to be eligible to participate in TRS.

2

In reviewing appeals of administrative orders from circuit court, we apply de novo the same statutory standard employed by the circuit court. Specifically, we have held:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). The relevant statutory standard of review set out in the West Virginia Administrative Procedures Act, W. Va. Code §§ 29A-5-1 to -5, states:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id*. § 29A-5-4(g).

With these standards in mind, we proceed to address the parties' arguments on appeal.

## III. Analysis

Before setting out the parties' arguments on appeal, we find it necessary to provide the legal context in which this case arises. From the time of its creation in 1941, the TRS has made a distinction between "teaching" and "nonteaching" members. Specifically, nonteaching members have always been required to be employed on a full-time basis in order to be eligible for participation in TRS. Teaching members, on the other hand, could participate while employed on a part-time basis until the Legislature altered the system in 1986 to require *all* employees to be employed on a full-time basis in order to participate in TRS.

The present matter hinges entirely upon whether Petitioner was a teaching or nonteaching member in 1982 when she began making contributions to TRS. If the former, she was eligible to participate; if the latter, she was not. Below, the Board determined that Petitioner was a nonteaching member because she was employed in a secretarial capacity, and as such, she was ineligible to participate in TRS while employed on a part-time basis. The circuit court affirmed

this determination.

On appeal, Petitioner argues, among other things,[6] that she was a teaching member during the years in question such that she was eligible to participate in TRS while employed on a part-time basis. The Board counters that Petitioner does not meet the definition of "teacher" set out in West Virginia Code § 18-7A-3 (1975),[7] meaning she was ineligible to participate in the retirement system while not a full-time employee. Upon review, we agree with Petitioner that, on the facts of this case, she met the definition of "teacher" provided in the statute.

As noted above, this case concerns eligibility for participation in TRS, which is governed by two related statutes. The first, West Virginia Code § 18-7A-35 (1975), concerns nonteaching employees and provides, in relevant part:

> Nonteaching employees shall mean all persons, *except teachers* regularly employed for full-time service by the following educational agencies: (a) Any county board of education, (b) the state board of education, (c) the West Virginia board of regents, and (d) the teachers' retirement board.
>
> Such nonteaching employees shall be entitled to all the rights, privileges and benefits provided for teachers by this article, upon the same terms and conditions as are herein prescribed for teachers.

*Id*. § 18-7A-35(a)-(b) (emphasis added).

The plain language of this statute excepts "teachers" from its application. Under the statutory language in effect at the times relevant to this case, teachers (as specifically defined in the statute) were eligible to participate in TRS if employed on a part-time basis. This is explained clearly in West Virginia Code § 18-7A-3, which provides:

> "Teacher" shall include the following persons, if regularly employed for at least half-time service: (a) Any person employed for instructional service in the public schools of West Virginia; (b) principals; (c) public school librarians; (d) superintendents of schools and assistant county superintendents of schools; (e) any county school attendance director holding a West Virginia teacher's certificate; (f) the executive secretary of the retirement board; (g) *members of the research, extension, administrative or library staffs of the public schools*; (h) the state superintendent of schools, heads

---

[6] We note that Petitioner also challenges the Board's reliance on the "error correction statute," West Virginia Code § 18-7A-3(10), to reduce her years of service. Because we find that Petitioner's years of service should not have been reduced at all, we need not address this argument.

[7] We apply the version of the statute in effect at the time Ms. Birchfield-Modad began contributing to TRS.

and assistant heads of the divisions under his supervision, or any other employee thereunder performing services of an educational nature; (i) employees of the state board of education who are performing services of an educational nature; (j) any person employed in a nonteaching capacity by the state board of education, the West Virginia board of regents, any county board of education, the state department of education or the teacher's retirement board, if such person was formerly employed as a teacher in the public schools; (k) all classroom teachers, principals and educational administrators in schools under the supervision of the state commissioner of public institutions; (l) employees of the state board of school finance if such person was formerly employed as a teacher in the public schools.

"Members of the administrative staff of the public school" shall include deans of instruction, deans of men, deans of women, and financial and *administrative secretaries.*

"Members of the extension staff" of the public schools shall include every agricultural agent, boys' and girls' club agent, and every member of the agricultural extension staff whose work is not primarily stenographic, clerical or secretarial.

*Id*. (emphasis added.)

Petitioner argues that she met the definition of "teacher." She contends that she was a member of the "administrative staff of the public schools" under § 18-7A-3(g) insofar as that class of individuals is defined to include "administrative secretaries" and she was an administrative secretary during the years in question. We agree. [8]

In full, the relevant portion of § 18-7A-3 provides that "teacher" includes "members of the research, extension, administrative or library staffs of the public schools[.]" The same code section then goes on to explain that "'[m]embers of the administrative staff of the public school' shall include deans of instruction, deans of men, deans of women, and financial and *administrative secretaries*." *Id*. (emphasis added). In their respective orders, the Board and the circuit court set forth several explanations justifying their conclusion that Petitioner was not an "administrative secretary" under this definition. Upon review, we find each of those arguments unavailing.

We will begin with the circuit court's interpretation of the foregoing statutory language. The court, apparently believing the language to be ambiguous, endeavored to ascertain the legislative intent behind the words "administrative secretary." We have held that "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without

---

[8] Because we agree with Petitioner's first argument, we need not address her alternative argument that she fell within the confines of § 18-7A-3(j) insofar as she was "any person employed in a nonteaching capacity by . . . the West Virginia board of regents[.]"

resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968). Moreover, we defer to the plain language of an unambiguous statute to ascertain the Legislature's intent. *See Hammons v. W. Va. Office of Ins. Comm'r*, 235 W. Va. 577, 584, 775 S.E.2d 458, 465 (2015). Finally, we have long held that "[g]enerally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use." Syl. Pt. 4, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

Instead of affording this language its plain, familiar meaning — that a secretary is an individual who performs common secretarial duties — the circuit court and the Board reasoned that "administrative secretaries" refers to cabinet-level secretaries with some modicum of decision-making authority. In support of this conclusion, the court reasoned that "the criteria listed in subsections (a) – (l) describe professional, supervisory, or high-level positions of authority" such that a part-time secretary would be out of place among them. When one reads the statute in full, this reasoning is unpersuasive.

First, cabinet-level secretaries are already provided for in different subsections of § 18-7A-3 — specifically subsection (k) which extends to "educational administrators" and subsection (h) which extends to "heads and assistant heads of divisions under the direction of the state superintendent[.]" Second, when examining the list of persons included alongside administrative staff in subsection (g), there is no logical reason for the Legislature to have included cabinet-level secretaries with library staff, researchers, and extension staff.

In order to support its reasoning the circuit court looked beyond the definition of "administrative staff of the public school" to the wholly separate definition for "extension staff of the public schools" to determine that the Legislature must have intended to exclude from the definition of "teacher" *any employee* whose duties are "primarily stenographic, clerical or secretarial." W. Va. Code § 18-7A-3. Presumably, the court believed this to be appropriate under this Court's direction that "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Compensation Com'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). While we agree that related statutes should be read in pari materia, we must give significance to the fact that the Legislature *separately defined* "administrative staff" and "extension staff" in the same statute. In doing so, the Legislature consciously chose to explicitly exclude secretarial employees of the *extension* staff, but did not do the same in its definition of "administrative staff." Rather, it did precisely the opposite and explicitly *included* secretaries in that definition.

We have long recognized that "[i]t is not for this Court to arbitrarily read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Barber v. Camden Clark Mem'l Hosp. Corp.*, 240 W. Va. 663, 671, 815 S.E.2d 474, 482 (2018)(quoting *Banker v. Banker*, 196 W. Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996)). Similarly, we have held that "[a] statute . . . may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. Pt. 1, *Consumer Advoc. Div. v. Pub. Serv. Comm'n*, 182 W. Va. 152, 386 S.E.2d 650 (1989). Here, under the guise of interpretation, the circuit court effectively rewrote the definition of "administrative staff of the public school" to

6

exclude persons from that definition who the Legislature explicitly included: secretaries. That was outside of the realm of interpretation and constituted clear legal error.

Given the foregoing, we conclude that the definition of "administrative staff of the public school" is not ambiguous. That definition explicitly includes "administrative secretaries" which are not, as the circuit court concluded, cabinet-level secretaries. Rather, the plain language, when taken in context, refers to auxiliary or supporting employees, as evidenced by the fact that the other types of employees in subsection (g) also constitute such supporting staff. The only outstanding question for this Court is whether Petitioner fell into that category during the 1982 to 1993 period in which she was making contributions as a part-time employee. We conclude that she did and that the lower tribunals clearly erred in finding otherwise.

The Board hinged its determination (to which the circuit court deferred) that Petitioner did not fit within this definition on the fact that she was not officially classified as an "Administrative Secretary" during the years in question.[9] As a preliminary matter, we disagree that the use of the term "administrative secretary" in West Virginia Code § 18-7A-3 necessarily refers to the employment classification "Administrative Secretary" which, as yet, remains undefined by the Legislature in either the relevant statutory scheme or the West Virginia Code of State Rules.[10] That said, even assuming, arguendo, the statutory language referred to the employment classification rather than the colloquial understanding of "administrative secretary," there is sufficient evidence in the record for this Court to determine that, on the facts of this case, Petitioner was an administrative secretary during the relevant years.

First, while the Board is technically correct that Petitioner was classified as a "Secretary II" from 1983 until July 1994, a review of the record reveals that, at least internally, she was also referred to by the human resources department as an "Admin. Sec." in October 1991 while still officially classified as a Secretary II. Moreover, the record includes a Memorandum from the University System of West Virginia in 1992 noticing employees of its intent to transition from the Secretary I to IV classification system to a new hierarchy that included: "Office Assistant, Secretary, Administrative Secretary, Executive Secretary, and Staff Associate." This gives rise to the inference that the position "Administrative Secretary" did not technically exist with regard to Petitioner from 1982 until that transition was effectuated. As such, it would have been technically impossible for her to be classified as an "Administrative Secretary" prior to that transition, so excluding her from TRS on that basis alone would be suspect. Moreover, given that Petitioner was already being referred to internally as an administrative secretary prior to the transition — and was ultimately classified as an Administrative Secretary after the transition — it stands to reason that she was already performing the duties of a person who would have been appropriately classified as an Administrative Secretary throughout her employment. The uncontroverted facts presented to the lower tribunals support this conclusion because Petitioner testified that she performed exactly the same tasks during her employment from the time she was hired in 1981 to

_____

[9] Rather, the appendix record indicates that Petitioner received that classification in July 1994.

[10] To the extent the employer may have defined this term, such definition is neither found in the appendix record nor have the parties cited to such a definition in their briefs.

the time she sought to retire. Specifically, she stated below that, in addition to general clerical work, she registered students for classes, proctored, coded and scored exams, assisted in an academic study, engaged in promotional work for COGS, sold books to students, and made drawings for special education classes. Her testimony is confirmed by documentation in the record listing her job duties and evaluating her performance. In the context of this case, these tasks clearly exceed standard clerical functions. When coupled with the additional facts mentioned above, we can only conclude that Petitioner was an administrative secretary within the definition of "teacher" in West Virginia Code § 18-7A-3. As such, under the version of the statute then in effect, she was eligible to participate in TRS as a part-time employee. The circuit court and the Board's findings to the contrary were clearly wrong, and we now reverse those determinations.

### IV. Conclusion

For the foregoing reasons, we reverse the Circuit Court of Kanawha County's September 1, 2020, order affirming the Board's decision reducing Petitioner's years of service credits. Further, we remand this matter with directions to enter an order reflecting her full years of service credits.

Reversed and remanded with direction.

**ISSUED**: November 3, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Judge Robert E. Richardson sitting by temporary assignment

**DISQUALIFIED:**

Justice C. Haley Bunn